USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/30/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Hawaii Structural Ironworkers Pension Trust Fund, Inc., *et al.*,

                    Plaintiffs,

          –v–

AMC Entertainment Holdings, Inc., *et al.*,

                    Defendants.

18-cv-00299 (AJN)

MEMORANDUM
OPINION & ORDER

---

ALISON J. NATHAN, District Judge:

    Plaintiffs bring claims under federal securities laws on behalf of themselves and a putative class of persons who purchased or acquired stock in AMC Entertainment Holdings, Inc. ("AMC") pursuant to a secondary public offering ("SPO") from December 20, 2016 to August 1, 2017, against AMC, numerous officers and board members, and several financial institutions that served as underwriters for the SPO. Plaintiffs move for the Court to certify their proposed class under Federal Rules of Civil Procedure Rule 23 and appoint Lead Counsel. For the reasons that follow, that motion is GRANTED.

## I.      BACKGROUND

    The Court assumes familiarity with the facts of this case, as stated in its September 23, 2019 Opinion & Order. Dkt. No. 137. Briefly, Defendant AMC Entertainment Holdings, Inc. is an entertainment company that owns, operates, and has interests in theaters in the United States and Europe. *Id.* at 2. In 2016, after Defendant Aron became CEO, Defendant AMC began a period of ambitious expansion, starting domestically with its acquisition of Carmike Cinemas, as

well as internationally with its acquisition of Odeon and Nordic entertainment companies. *Id.* at
3-4.  Because these projects required accumulating large amounts of debt, Defendant AMC held
a secondary public offering in February 2017 in an effort to deleverage the company, which
raised approximately $618 million.  *Id.* at 4.  (In holding the secondary public offering,
Defendants submitted various filings to the SEC, which Plaintiffs' refer to collectively as the
"Registration Statement."  *Id.*).  Plaintiffs purchased AMC common stock pursuant to the SPO.
*Id.*

Then on August 1, 2017, Defendant AMC announced preliminary financial results for the
second quarter that were well below expectations, including a projected net loss on the year of
between $125 to $150 million.  *Id.* at 4.  As a result, AMC common stock dropped 27% on
August 2, 2017, which was down 57% from its high point during the class period.  *Id.* at 4.
During a conference call on August 4, 2017, Defendant Aron offered several reasons for AMC's
under performance, including the 11.3% revenue decline in Carmike theaters due to under
investment in its theaters, its shrinking market share, and the inability to convert Carmike loyalty
program members to AMC's loyalty program, and the seasonality of its European business.  *Id.*
at 5.

Plaintiffs filed their Second Amended Complaint, the operative complaint in this action,
on November 27, 2018.  *Id.*  In that complaint, they bring claims against Defendants on behalf of
themselves and a class of persons similarly situated for violations of the Securities Act of 1933,
15 U.S.C. §§ 77k, 771(a)(2), 77o, in connection with Defendant's Registration Statement for the
February 2017 SPO, and the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) and its
implementing regulations, 17 C.F.R. § 240.10b-5, in connection with the Registration Statement
as well as multiple allegedly misleading representations and omissions made during the "Class

Period." *Id.*  The Second Amended Complaint defines the putative class as "persons and entities similarly situated who purchased or otherwise acquired: (i) the common stock of AMC Entertainment Holdings, Inc. ('AMC' or the 'Company') pursuant or traceable to its secondary public offering (the 'SPO') on or about February 8, 2017; and (ii) all persons and entities who purchased or acquired the publicly traded common stock of AMC between December 20, 2016 and August 1, 2017, inclusive (the 'Class Period')."  Dkt. No. 96.

Defendants filed a motion to dismiss and the Court granted in part and denied in part that motion in its September 23, 2019 Opinion & Order.  Dkt. No. 137.  The Court granted Defendants' motion as to some statements or omissions, but permitted Plaintiffs' Securities Act and Exchange Act claims that were based on material omissions or misstatements regarding Carmike's under investment in its theaters, as well as the Securities Act claims that were based on the conversion of loyalty program members and seasonality of European business, to go forward. *Id.* at 50.  Plaintiffs move for the Court to certify its proposed class pursuant to the Federal Rules of Civil Procedure Rule 23.  Dkt. No. 155.

## II.    DISCUSSION

Before the Court is Plaintiffs' motion to certify the proposed class.  Defendants do not oppose class certification for the Exchange Act claims but argue instead that class definition should be narrowed to exclude so called "in-and-out traders." *See* Dkt. No. 163.  Additionally, Defendants contest certification of the Securities Act claims on the grounds that Plaintiff Hawaii Structural Ironworkers Pension Trust Fund, Inc. is an inadequate representative, and argue that in the alternative, if a class is certified there should be additional exclusions from the class definition for those claims as well. *Id.*  For the reasons that follow, the Court grants Plaintiffs' motion and denies Defendants' requests to narrow the definition of the class.

### A.  Class Certification under Rule 23

A "class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," and in order to qualify for class certification, "a party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23" of the Federal Rules of Civil Procedure.  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (internal quotations and citations omitted).  Rule 23 first requires that the putative class satisfies four "prerequisites", which are:  "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. Proc. 23(a).

Next, the party seeking class certification must show that it satisfies one of the three criteria under Rule 23(b), which, as relevant here, includes 23(b)(3):  "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. Proc. 23(b)(3).  Importantly, the standard for demonstrating that the putative class satisfies the requirements of 23(a) and one of the criteria of 23(b) is more than "a mere pleading standard." *Comcast Corp.*, 569 U.S. at 33.  Rather, the party seeking certification must "affirmatively demonstrate [their] compliance" with the requirements of Rule 23 "by a preponderance of the evidence.  *Ouedraogo v. A-1 Int'l Courier Serv., Inc*., No. 12-CV-5651 AJN, 2014 WL 4652549, at *2-3 (S.D.N.Y. Sept. 18, 2014) (citing *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008)).

### B.  Rule 23(a) Prerequisites

The Court determines that all four of the Rule 23(a) prerequisites are satisfied for both

the Exchange Act and Securities Act claims.

### 1.  Numerosity, Commonality, and Typicality

The first three Rule 23(a) requirements are uncontested.  Beginning with numerosity, a

class consisting of 40 or more members is presumed to be numerous in this Circuit.  *See Consol.*

*Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  In a securities class action,

numerosity can be demonstrated by showing that a large number of shares were "outstanding and

traded during the class period." *Teachers' Ret. Sys. of La. v. ACLN Ltd*., No. 01 Civ.

11814(LAP), 2004 WL 2997957, at *3 (S.D.N.Y. Dec. 27, 2004).  As Plaintiffs have presented

evidence that more than 230 million shares of Defendant AMC's common stock were purchased

and sold on U.S. Markets during the Class Period and that somewhere between 34.3 million to

55.1 million shares were issued and outstanding, Dkt. No. 156 at 8, the Court finds that Plaintiffs

have affirmatively demonstrated that the putative class consists of well over 40 people and

indeed is likely in the thousands.

Commonality as well is also easily satisfied for the putative class.  The "commonality

requirement is met" where "the plaintiffs' claims arise from the same alleged course of conduct

and are based on legal theories similar to those of all the class members." *In re Deutsche*

*Telekom Ag Sec. Litig.*, 229 F. Supp. 2d 277, 281 (S.D.N.Y. 2002).  Here, nearly all questions of

law and fact are common to all Plaintiffs and class members claims, including whether

Defendants made materially false and misleading statements or omissions in their Registration

Statement or other statements made during the Class Period.  *See In re Flag Telecom Holdings,*

*Ltd. Sec. Litig*., 245 F.R.D. 147, 158 (S.D.N.Y. 2007), *order aff'd in part, vacated in part*, 574

F.3d 29 (2d Cir. 2009) (finding commonality where, *inter alia*, the question of "whether

defendants violated the federal securities law by the acts and conduct alleged in the Complaint" was common to all class members).  Similar to commonality, "[t]ypicality . . . requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).  Likewise, the claims of the representatives and the class members arise from the same alleged misrepresentations and omissions within the Class Period and thus the representatives are typical of the class.

### 2.  Adequacy

Lastly, Rule 23(a) requires that the representatives of the class must be adequate.  Adequacy has two components: "First, class counsel must be qualified, experienced and generally able to conduct the litigation," and "[s]econd, the class members must not have interests that are antagonistic to one another."  *In re Drexel Burnham Lambert Grp., Inc.,* 960 F.2d 285, 291 (2d Cir. 1992).  Of the four prerequisites, "courts have expressed particular concern for the adequacy of representation in a class suit because the judgment conclusively determines the rights of absent class members."  *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968).

In cases where the proposed representative of a putative class has "so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys," they are an inadequate representative and the Court should deny class certification.  *Maywalt v. Parker & Parsley Petroleum Co.,* 67 F.3d 1072, 1077-78 (2d Cir. 1995).  District courts have found putative representatives to be inadequate where they did not have "a general understanding of the nature

of class-action litigation," and had a substantial lack of knowledge of the case that "threaten[ed] to undermine plaintiffs' case as a whole." *Scott v. New York City Dist. Council of Carpenters Pension Plan*, 224 F.R.D. 353, 355-56 (S.D.N.Y. 2004).  For example, in *Scott*, the proposed representative was unaware of "what allegations were contained in the complaint," "did not know for sure whether this was a class action suit" and did not "know what a class representative was (or even that he was one)," and thus the court determined he was an inadequate representative because be displayed an "alarming lack of familiarity with the suit." *Id.* at 356.

However, denial of class certification on the grounds of inadequacy should only occur in the most extreme instances. "Courts rarely deny class certification on the basis of the inadequacy of class representatives," and will do so "only in flagrant cases, where the putative class representatives display an alarming unfamiliarity with the suit, display an unwillingness to learn about the facts underlying their claims, or are so lacking in credibility that they are likely to harm their case." *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 51 (S.D.N.Y. 2012).  Particularly "in complex securities litigation," the "named plaintiffs are not expected to possess expert knowledge of the details of the case and must be expected to rely on expert counsel." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 61-62 (2d Cir. 2000).  Because a representative in a complex securities action may properly depend on class counsel to understand the details of the case, a representative's lack of knowledge should not be disqualifying unless it demonstrates that the representative is truly "unwilling or unable to pursue the litigation on behalf of the class." *Id.* at 62 (overturning the district court's decision that the representative was inadequate and determining that his lack of knowledge displayed in a deposition, rather than disqualifying him, "demonstrate[d] [his] ability to appreciate the limits of his knowledge and rely on those with the relevant expertise.").

In this case, the adequacy requirement is met.  Shepherd, Finkelman, Miller & Shah, LLP, counsel for Lead Plaintiff, and Robbins Geller Rudman & Dowd LLP, class counsel for Hawaii, are sophisticated law firms with considerable experience in complex securities cases, are therefore "qualified, experienced and generally able to conduct the litigation." *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d at 291.  Moreover, as Defendants do not contest, the interests of the class members and representatives are aligned in this case and there are no apparent conflicts. *See id.*

Defendants argue that Hawaii is nonetheless an inadequate representative for this action because of its lack of familiarity with the action.  According to Defendants, at Hawaii's deposition, its 30(b)(6) representative (a) did not review the operative complaint prior to the deposition, (b) was unaware whether anyone at Hawaii did anything to investigate or verify the allegations in the complaint, (c) revealed that neither he nor anyone else at Hawaii was actually following any developments in the litigation, (d) was confused about vital matters in the case, including whether Plaintiffs had settlement authority and AMC's public disclosures, and (e) when presented with Hawaii's trading records, was unable to confirm any transactions of AMC stock during the class period.  Dkt. No. 163 at 6-8.

After reviewing the relevant portions of deposition transcripts, *see* Dkt. Nos. 164-1; 171-1, the Court determines that any gaps in Hawaii's 30(b)(6) deponent's knowledge of the case do not render it an inadequate representative.  In this complex securities litigation, Hawaii is expected to rely heavily on the expertise of its counsel, who, as explained above, are experienced in securities class actions and competent to litigate this case.  Moreover, in his testimony, the deponent was compliant and attempted to answer questions as best he could.  He showed an understanding of the basic facts that gave rise to this action as well the basic nature of the claims

in the case, and otherwise indicated that Hawaii relies on its legal representatives to understand

the case in greater detail.  Most importantly, he evinced an understanding of how a class action

works, the fact that Hawaii is a representative of this class action and Hawaii's duties in that role,

and affirmed Hawaii's willingness to carry out those duties.  Therefore, despite the deponent's

failure to read the Second Amended Complaint and his inability to answer some important

questions about the case, the Court does not find that he is "unwilling or unable to pursue the

litigation on behalf of the class." *Baffa*, 222 F.3d at 61-62 (2d Cir. 2000).  Hawaii is an adequate

representative and the Ruel 23(a) prerequisites are satisfied.

### C.  Rule 23(b)(3) Requirements

Once a party seeking class certification has demonstrated that the Rule 23(a) prerequisites

have been satisfied, they must show that the action is one of the kinds that may be "maintained"

under Rule 23(b).  Fed. R. Civ. P. 23(b).  Here, Plaintiffs contend that the class meets the

requirements of Rule 23(b)(3) because "the questions of law or fact common to class members

predominate over any questions affecting only individual members" in this case and "a class

action is superior to other available methods for fairly and efficiently adjudicating the

controversy."  Fed. R. Civ. P. 23(b)(3).

Defendant does not contest that the requirements of Rule 23(b)(3) are satisfied for both

the Securities Act and the Exchange Act claims, and the Court likewise determines that Plaintiff

has demonstrated that the requirements of Rule 23(b)(3) are met by a preponderance of the

evidence.

### 1.  Common questions of law and fact predominate

"Class-wide issues predominate if resolution of some of the legal or factual questions

that qualify each class member's case as a genuine controversy can be achieved through

9

generalized proof, and if these particular issues are more substantial than the issues subject only

to individualized proof." *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir.

2010).  Moreover, the "Supreme Court has noted that the predominance requirement 'is a test

readily met in certain cases alleging . . . securities fraud.'" *Cromer Fin. Ltd. v. Berger*, 205

F.R.D. 113, 127 (S.D.N.Y. 2001) (citing *Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 625

(1997)).  As described below, the Court determines that common questions of law and fact

predominate over individual ones for both the Securities Act and Exchange Act Claims.

### a. Securities Act Claims

For the Securities Act claims, Plaintiffs "need not allege scienter, reliance, or loss

causation." *In re Morgan Stanley Info. Fund Sec. Litig*., 592 F.3d 347, 359 (2d Cir. 2010).

Therefore, the two major issues regarding Defendants' liability will be whether there were any

misrepresentations or omissions in Defendant AMC's Registration Statement and whether any

such misrepresentations or omissions were material.  These are issues that require only

generalized proof.  *See In re IndyMac Mortg.-Backed Sec. Litig*., 286 F.R.D. 226, 235 (S.D.N.Y.

2012) ("[M]ateriality for Securities Act claims is an issue subject to generalized proof.").

While Defendants do not contest this point, they nonetheless argue that the scope of any

class for Plaintiff's Section 11 Securities Act claims, *see* 15 U.S.C. § 77k, must be narrowed on

the grounds of traceability, otherwise the requirement of predominance cannot be satisfied.

There is a traceability requirement implicit in Section 11, which provides "a cause of action . . .

for any person who purchased a security that was originally registered under the allegedly

defective registration statement—so long as the security was indeed issued under that registration

statement and not another."  *DeMaria v. Andersen*, 318 F.3d 170, 176 (2d Cir. 2003).  In other

words, "any individual who can show that his or her shares were issued under/registered to the

allegedly defective registration statement," i.e. can trace their shares back to the statement,

"regardless of whether the shares were acquired directly from the issuer or in the aftermarket,"

can bring a Section 11 claim. *In re Smart Techs., Inc. S'holder Litig.,* 295 F.R.D. 50, 61

(S.D.N.Y. 2013).

Defendants thus argue that the scope of the class for the Section 11 claims must be

limited to those who purchased shares directly from the underwriters for the Second Public

Offering. First, Defendants contend it is "virtually impossible" to determine whether an

aftermarket purchaser's shares are traceable to those issued pursuant to the Registration

Statement as opposed to those shares that were previously existing on the market, and therefore

aftermarket purchasers should not be included in the class. Dkt. No. 163 at 10. Additionally,

Defendants argue that if the Court does not exclude those who bought shares on the secondary

market, then those purchasers will be required to prove that they can trace their shares back to

the Registration Statement associated with the SPO – which will require individualized proof.

Dkt. No. 163 at 10-11. According to Defendants, the class would not be able to be certified

because the individualized issues of traceability would predominate over the common issues of

liability, such as whether the Registration Statement contains materially misleading omissions.

As a preliminary matter, the Court declines to determine at this stage that it will be

impossible for individual class members to prove traceability in this case. "[W]here shares

issued under an allegedly defective registration statement are publicly traded alongside shares

already in the secondary market from prior offerings, tracing is considerably more complicated,"

but nonetheless may be established through "proof of a direct chain of title from the original

offering to the [plaintiff]." *In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income*

*Sec. Act (ERISA) Litig.*, 281 F.R.D. 134, 147 (S.D.N.Y. 2012). Defendants primary argument is

that millions of shares were already trading in the market prior to the SPO, but they have not

provided any basis for the Court to conclude that *none* of the class members who bought their

shares on the secondary market will have any evidence of a direct chain of title.  Because "it is

arguably possible that some putative class member who purchased in the secondary market

indeed has "proof of traceability," at this stage "making an assumption [] that an aftermarket

purchaser cannot show traceability would be inappropriate."  *In re Smart Techs., Inc. S'holder*

*Litig*., 295 F.R.D. at 62.

Assuming it's possible that a class member who purchased their shares on the secondary

market could trace its purchase back to the Registration Statement, Defendants are correct that

doing so will require individualized proof.  But "[a]lthough determining traceability may require

individualized inquiries, the potential for such inquiries alone does not defeat predominance." *Id.*

at 61.  Rule 23(b)(3) does not require that a "plaintiff seeking class certification to prove that

each element of her claim is susceptible to classwide proof," *Amgen Inc. v. Connecticut Ret.*

*Plans & Tr. Funds*, 568 U.S. 455, 469 (2013), but rather that the generalized liability questions

must be "more substantial than the issues subject only to individualized proof." *Myers v. Hertz*

*Corp*., 624 F.3d 537, 547 (2d Cir. 2010).  *See* Rule 23(b)(3).  At least one court in this district

has determined that the inclusion of aftermarket purchasers in the class did not defeat the

predominance of liability issues in a Section 11 class action claim.  *See In re Smart Techs., Inc.*

*S'holder Litig.,* 295 F.R.D. at 61.  The Court agrees with the reasoning in *Smart Techs* as applied

to this case.  Here, "[l]iability will turn first and primarily on whether the Offering Documents

contained misstatements and omissions as plaintiff alleges," and then some class members, i.e.

those who bought on the secondary market instead of directly from the underwriters, will then

have to show that "their purchases can traced back to the Registration Statement." *Id.*   Thus, the

"liability issue clearly predominates over individualized tracing inquiries," which will arise only if and when liability has been determined. *Id.* at 61.

### b. Exchange Act Claims

The Exchange Act claims require further analysis. For these claims, Plaintiffs will eventually need to prove the elements of falsity, materiality, and loss causation on the merits, but those elements are considered common issues. *See Amgen Inc.*, 568 U.S. at 475. As such, "[w]hether common questions of law or fact predominate in a securities fraud action often turns on the element of reliance." *Erica P. John Fund, Inc. v. Halliburton Co*., 563 U.S. 804, 810 (2011). Therefore, "a plaintiff seeking class certification under Rule 23(b)(3) must demonstrate a method of proving reliance that is common among the class." *Amerio v. Gray*, No. 5:15-CV-538, 2019 WL 4170160, at *5 (N.D.N.Y. Sept. 3, 2019) (citing *In re IPO Secs. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006).

The Supreme Court has recognized that "requiring proof of individualized reliance from every securities fraud plaintiff effectively would prevent plaintiffs from proceeding with a class action in Rule 10b-5 suits," because "[i]f every plaintiff had to prove direct reliance on the defendant's misrepresentation," then "individual issues then would overwhelm the common ones, making certification under Rule 23(b)(3) inappropriate." *Halliburton Co. v. Erica P. John Fund, Inc.,* 573 U.S. 258, 268 (2014) (cleaned up). Thus, "securities fraud plaintiffs can in certain circumstances satisfy the reliance element of a Rule 10b-5 action by invoking a rebuttable presumption of reliance, rather than proving direct reliance on a misrepresentation." *Id. See also Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC,* 328 F.R.D. 86, 93 (S.D.N.Y. 2018) ("classwide adjudication" of securities fraud actions "is possible only if reliance can be presumed.").

In applying a presumption of reliance at the class certification stage, the Court does not "presume, as a matter of *law*, that the element of reliance is satisfied for each putative class member," but rather the Court determines that "based on the evidence in the record at this stage of the proceedings, [] a reasonable factfinder could conclude beyond a preponderance of the evidence that each individual plaintiff relied on the defendants' uniform representations." *Anwar v. Fairfield Greenwich Ltd*., 306 F.R.D. 134, 144 (S.D.N.Y. 2015). The question is therefore "whether Plaintiffs in this case can prove reliance on a class-wide basis through common, circumstantial evidence . . . for the purposes of class certification." *Ge Dandong v. Pinnacle Performance Ltd.,* No. 10 CIV. 8086 JMF, 2013 WL 5658790, at *10 (S.D.N.Y. Oct. 17, 2013).

Plaintiffs argue, and Defendants do not contest, that they are entitled to a presumption of reliance under both the *Affiliated Ute Citizens* presumption, which applies to omissions, and the *Basic* presumption, which applies to misrepresentations. As explained below, the Court agrees that both presumptions apply, and as Defendants do not attempt to rebut these presumptions, "reliance is presumed" and "there is no risk of individual reliance issues predominating over common ones." *Menaldi*, 328 F.R.D. at 98.

### *Affiliated Ute* Presumption

The *Affiliated Ute* presumption of reliance applies "where a plaintiff's fraud claims are based on omissions" and the "plaintiff shows that defendants had an obligation to disclose the information and the information withheld is material." *Strougo v. Barclays PLC*, 312 F.R.D. 307, 313–14 (S.D.N.Y. 2016) (quoting *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153 (1972)). For cases "involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery," instead, "[a]ll that is necessary is that the facts withheld be

material in the sense that a reasonable investor might have considered them important in the making of this decision." *Affiliated UtE*, 406 U.S. at 153–54.

While the *Affiliated Ute* presumption applies only to omissions, both omissions and misstatements are alleged in Plaintiffs' Second Amended Complaint with respect to their Exchange Act claims. *See* Dkt. No. 117 ¶¶ 164-165. Specifically, Plaintiffs allege that Defendants made a material omission in the Registration Statement when they failed to include that Carmike had underinvested in its theaters, and that Defendants made a number of other materially false and misleading statements during the Class Period. *Id.*; Dkt. No. 137. The Court determined that a number of these other statements were allegedly misleading by omission, but that others were affirmatively misleading statements. *Id.* "[W]here plaintiffs' claims are based on a combination of omissions and misstatements, courts in this Circuit" nonetheless "have acknowledged the applicability of the *Affiliated Ute* presumption." *Fogarazzao v. Lehman Bros*., 232 F.R.D. 176, 186 (S.D.N.Y. 2005). *See also Strougo v. Barclays PLC*, 312 F.R.D. 307, 319 (S.D.N.Y. 2016) ("[T]he existence of affirmative misrepresentations does not at this stage in the litigation preclude plaintiffs from relying on the *Affiliated Ute* presumption.") (cleaned up).

As Defendants do not contest, the *Affiliated Ute* presumption applies here. Plaintiffs "have sufficiently demonstrated the materiality of the allegedly omitted information" regarding the underinvestment in Carmike's theaters and Defendants' duty to disclose it, and thus the Court determines that Plaintiffs "have established by a preponderance of the evidence that they are entitled to the presumption of reliance under *Affiliated Ute*" for the purposes of class certification. *City of Livonia Employees' Ret. Sys. v. Wyeth*, 284 F.R.D. 173, 184 (S.D.N.Y. 2012). *See* September 23, 2019 Opinion & Order, Dkt. No. 137 at 12-13.

*Basic* Presumption

To the extent Plaintiffs allege claims that are based on Defendants' affirmative statements, they seek for the Court to apply the *Basic* presumption.  The *Basic* presumption, or fraud-on-the-market theory, "essentially holds that when a stock trades on an efficient market, courts can presume that a material misrepresentation affected investor behavior," and requires proving "(1) the alleged misrepresentations were publicly known, (2) they were material, (3) the stock traded in an efficient market, and (4) the plaintiff traded the stock between when the misrepresentations were made and when the truth was revealed."  *Menaldi*, 328 F.R.D. at 94 (S.D.N.Y. 2018) (citing *Halliburton Co*, 573 U.S. at 277-278).

As Defendants do not contest, all four prongs apply to the materially misleading statements regarding Carmike's underinvestment in its theaters alleged in Plaintiffs' complaint that survived Defendants' motion to dismiss, and Plaintiffs are thus entitled to the *Basic* presumption of reliance.  Dkt. No. 137 at 22-31.  Based on the record before it, the Court concludes that Plaintiffs have demonstrated by a preponderance of the evidence that the alleged statements were publicly known, were material, and that Plaintiffs traded the stock in the period between when the misrepresentations were allegedly made and when the truth was disclosed.  *Id.*

Moreover, Plaintiffs have demonstrated by a preponderance of the evidence the third prong that AMC stock traded on an efficient market.  During the relevant time period, AMC traded on the New York Stock Exchange, which courts presume to be an efficient market.  *See City of Livonia Employees' Ret. Sys.*, 284 F.R.D. at 182 (S.D.N.Y. 2012).  Defendants do not argue against this presumption.  Even if they had, the factors set forth in *Cammer v. Bloom*, 711 F. Supp. 1264, 1276 (D.N.J. 1989) readily apply, which is the test courts in this Circuit generally rely on to determine market efficiency.  *See Strougo,* 312 F.R.D. at 315 (S.D.N.Y. 2016).  For example, *Cammer* instructs courts to look at the average weekly trading volume of the stock, as

"[h]igh volume suggests efficiency because it implies significant investor interest in the company," and '[s]uch interest, in turn, implies a likelihood that many investors are executing trades on the basis of newly available or disseminated corporate information." *Id.* at 316 (cleaned up).  Under *Cammer*, a turnover of two percent or more of outstanding shares gives rise to a strong presumption of market efficiency. *Cammer*, 711 F. Supp. at 1286.  According to the expert testimony provided by Plaintiff, the average weekly trading volume for AMC stock during the class was 14.1% -- nearly seven times that.  Dkt. No. 156 at 17.  Thus, Plaintiffs are entitled to the *Basic* presumption of reliance for the affirmative misleading statements allegedly made by Defendants.

### 2.  Superiority

In addition to a determination that the common issues in the case predominate over the issues of individual class members, Rule 23(b)(3) also requires a determination that the class action be the superior method for adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3). Defendants do not contest that a class action is the superior choice for this litigation.  Because in this case, like most complex securities cases, "[m]ultiple lawsuits would be costly and inefficient" and "although a large number of individuals may have been injured, no one person may have been damaged to a degree which would induce him to institute litigation solely on his own behalf," a class action is the superior method of ensuring efficient and fair adjudication of all claims.  *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 352 (S.D.N.Y. 2015).  The requirements of 23(b)(3) are satisfied.

### D.  Other Potential Exclusions from Class Definition

In addition to their argument against certification for the Securities Act claims, Defendants argue that exclusions should be made to the class definition for the Exchange Act claims, as well as for the class for the Securities Act claims, if such a class is approved.

First, Defendants maintain that any class certified for the Section 11 claims should exclude any prospective class members who sold the AMC shares that they acquired from the SPO above the offering price of $31.50 per share.  According to Defendants, because the statutory damages for Section 11 claims "shall . . . not exceed[] the price at which the security was offered to the public," 15. U.S.C. § 77k(e), those purchasers would not be entitled to any damages.  Similarly, for the Exchange Act claims, Defendants next conclude that any "in-and-out" traders, i.e. those who sold their shares prior to the corrective disclosure on August 1, 2017, should be excluded from the definition of the certified class because they too would not be eligible for damages.

The Court will not grant these exclusions to the class definition.  Assuming *arguendo* Defendants are correct about the fact that these two categories of prospective class members are ineligible for damages, then such exclusions are entirely unnecessary.  Undeniably, "an investor who is not damaged would not have a viable claim," and thus requiring the class definition expressly exclude those who are ineligible for damages is superfluous.  *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 492 (S.D.N.Y. 2009) (explaining that the adding the language "and were damaged thereby" to a class definition was "simply superfluous.").  Plaintiffs likewise concede that any prospective class members who "did not suffer damages" would not be "similarly situated" to the Plaintiffs.  Dkt. No. 156 at 9.  Additionally, a determination of whether these prospective class members are eligible for damages would not only be unnecessary, but also premature.  In the event Plaintiffs succeed in arguing for

Defendants' liability on their Securities Act, Exchange Act claims, or both, Defendants may raise their arguments regarding the availability of damages at that time. *See In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 105 (S.D.N.Y. 2016) ("[P]laintiffs are not required to establish loss causation—let alone proffer a damages model—on class certification.").

Lastly, Defendants request that, for Plaintiffs' Section 12(a)(2) Securities Act claims, the Court exclude from the definition of the class any purchasers who's "statutory seller" was "not one of the underwriters in the SPO." Dkt. No. 163 at 12. Under Section 12(a)(2), a plaintiff may only recover from their "statutory seller," which is an individual or entity who "(1) 'passed title, or other interest in the security, to the buyer for value,' or (2) 'successfully solicited the purchase of a security, motivated at least in part by a desire to serve his own financial interests or those of the securities owner.'" *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010) (citing *Pinter v. Dahl*, 486 U.S. 622, 647 (1988)). Defendants argue that the class definition is too broad and does not account for this limitation.

The Court will not grant this exclusion from the class definition either. Whether or not Defendants qualify as "statutory sellers" is an element of Plaintiffs' 12(a)(2) claim, and thus a question of liability that Plaintiffs will need to prove on the merits. *See In re Weight Watchers Int'l Inc. Sec. Litig.*, No. 19CV2005, 2020 WL 7029134, at *7 (S.D.N.Y. Nov. 30, 2020) (stating the elements of a Section 12(a)(2) claim, including that "the defendant is a 'statutory seller.'"). The Supreme Court has made clear that "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage," and as such "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc.*, 568 U.S. at 466. As explained above, the questions of liability in Plaintiffs' Securities Act claims are subject to

generalized proof – and, as Defendants do not contest, the issue of whether Defendants are statutory sellers is no exception.  Thus, because resolving the issue of whether Defendants are statutory sellers is not necessary to determine whether common issues predominate for Plaintiffs' Section 12(a)(2) claim and is not otherwise "relevant to determining whether the Rule 23" requirements are satisfied for the purposes of class certification, the Court will not decide the issue.  *Id.*

### E.  Lead Counsel

Plaintiffs also request that, pursuant to Federal Rules of Civil Procedure 23(g), the Court appoint Shepherd, Finkelman, Miller & Shah, LLP, as Class Counsel.   Rule 23(g) requires the Court to consider a number of factors, including "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action."  Fed. R. Civ. P. 23(g)(1). As discussed *supra* II.B.2, SFMS is a firm that is competent and experienced in complex securities litigation.  For that same reason, the Court appointed SFMS as Lead Counsel in this consolidated case.  Dkt. No. 88.  The Court affirms for the purposes of Fed. R. Civ. P. Rule 23(g) that SFMS is qualified to serve as Lead Counsel for the class action, as Defendants do not contest.

### III.    CONCLUSION

For the reasons above, the Court determines that Plaintiffs' proposed class meets the requirements of Rules 23(a) and (b) and grants Plaintiffs' motion for class certification in full. The Court denies Defendants' proposed exclusions from the class definition.

This resolves Dkt. No. 155. The parties are to proceed with discovery in accordance with the Case Management Plan and subsequent scheduling orders.  *See* Dkt. No. 144.

SO ORDERED.

Dated: March 30, 2021
      New York, New York

_____
ALISON J. NATHAN
United States District Judge