**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| HAWAII STRUCTURAL IRONWORKERS PENSION TRUST FUND, Individually and on Behalf of All Others Similarly Situated, | : : : : | No. 1:18-cv-00299-AJN-SLC |
| Plaintiff, | : : | |
| vs. | : : | |
| AMC ENTERTAINMENT HOLDINGS, INC., *et al.*, | : : : | |
| Defendants. | : : | November 1, 2021 |

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

I.  INTRODUCTION ........................................................................................................2

II. FACTUAL AND PROCEDURAL BACKGROUND ...................................................4

    A.  Description of the Action and Procedural History .......................................................4

        1.  The Parties ...........................................................................................................4

        2.  Procedural History ............................................................................................. 4

    B.  Discovery Efforts .......................................................................................................6

    C.  Settlement Discussions ...............................................................................................6

    D.  The Proposed Settlement ............................................................................................7

    E.  Proposed Timetable for Effectuation of the Settlement ..............................................7

III. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ...............................9

    A.  Standard of Review .....................................................................................................9

    B.  The Court is Likely to Grant Final Approval of the Proposed Settlement.................10

        1.  The Rule 23(e)(2) Factors Weigh in Favor of Preliminary Approval .................11

            i.  Adequacy of Representation .......................................................................11

            ii.  The Settlement is the Result of Good Faith, Arm's-Length Negotiations
                by Well-Informed and Experienced Counsel................................................11

            iii.  Adequacy of Relief .....................................................................................13

                a.  The costs, risks, and delay of trial and appeal.........................................13

                b.  The effectiveness of the proposed method of distributing relief ...........15

                c.  The terms of the proposed award of attorneys' fees ...............................16

        2.  The Remaining *Grinell* Adequacy Factors Weigh In Favor Of Preliminary
           Approval ...........................................................................................................17

   i. The Reaction of the Class to the Settlement ...................................................17

   ii. The Ability of Defendants to Withstand a Greater Judgment Does Not
    Weigh Against Preliminary Approval ...........................................................18

   iii. The Range of Reasonableness of the Settlement in Light of the Best Possible
    Recovery and Attendant Risks Support Preliminary Approval ...................18

IV. THE PROPOSED NOTICE PLAN SHOULD BE APPROVED.......................................20

V. THE PLAN OF ALLOCATION SHOULD BE PRELIMINARY APPROVED...............22

VI. CONCLUSION.....................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## <u>Cases</u>

*City of Detroit v. Grinell Corp.*,
495 F.2d 448 (2d Cir. 1974)........................................................................ 10, 20

*Erica P. John Fund, Inc. v. Halliburton Co.*,
2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ........................................... 17

*Griffin v. Flagstar Bancorp, Inc.*,
2013 WL 4779017 (E.D. Mich. July 29, 2013) ......................................... 22

*Guevoura Fund Ltd. v. Silverman*,
2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ............................................ 22

*In re Am. Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001).......................................................... 20

*In re AOL Time Warner ERISA Litig.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)................................................. 18, 23

*In re Currency Conversion Fee Antitrust Litig.*,
2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006)............................................... 20

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018)........................................................ 9, 22, 23

*In re Flag Telecom Holdings Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. Nov 8, 2010)................................................ 11, 12, 19

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................... 14, 20, 23

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019)............................................... *passim*

*In re Interpublic Sec. Litig.*,
2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ............................................ 20

*In re IPO Sec. Litig.*,
243 F.R.D. 79 (S.D.N.Y. 2007) ................................................................. 10

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  327 F.R.D. 483 (S.D.N.Y. 2018) ................................................................ 19

*In re Marsh & McLennan Cos. Inc., Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ........................................ 13

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ................................................................ 23

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
  246 F.R.D. 156 (S.D.N.Y. 2007) ................................................................ 21

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ................................................... 12, 22

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) ................................................ 9, 10, 14, 17

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  164 F.R.D 362 (S.D.N.Y. 1996). ................................................................ 21

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.*,
  2012 WL 3589610 (D. Conn. Aug. 20, 2012) ........................................ 20

*In re Sumitomo Copper Litig.*,
  189 F.R.D. 274 (S.D.N.Y. 1999) ................................................................ 13

*In re Veeco Instruments Inc. Sec. Litig.*,
  2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) .......................................... 12

*In re Warner Chilcott Ltd. Sec. Litig.*,
  2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ................................... 17, 18

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ....................................................... 14

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ....................................................................................... 21

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) ........................................................................ 19

*Oppenlander v. Standard Oil Co.*,
  64 F.R.D. 597 (D. Colo. 1974) ................................................................... 14

*Plummer v. Chem. Bank*,
    668 F.2d 654 (2d Cir. 1982)........................................................................... 14

*Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.*,
    2015 WL 6964973 (E.D.N.Y. Nov. 10, 2015) ....................................................... 22

*Torres v. Gristedes Operating Corp.*,
    2010 WL 2572937 (S.D.N.Y. June 1, 2010) ........................................................ 10

*Wal-Mart Stores, Inc. v. Visa U.S.A.*,
    396 F.3d 96 (2d Cir. 2005)........................................................................... 9, 11

*Wilson v. DirectBuy, Inc.*,
    2011 WL 2050537 (D. Conn. May 16, 2011) ....................................................... 20

## Statutes

15 U.S.C. § 78u-4(a)(3)(A)(i) ................................................................................ 5

15 U.S.C. § 78u-4(a)(4) ...................................................................................... 16

## Rules

Fed. R. Civ. P. 23 ................................................................................... *passim*

## Regulations

17 C.F.R. § 240.10b-5....................................................................................... 4

26 C.F.R. § 1.468B-1 ....................................................................................... 7

Pursuant to Federal Rule of Civil Procedure 23, Lead Plaintiff, the International Union of Operating Engineers Pension Fund of Eastern Pennsylvania and Delaware ("Operating Engineers" or "Lead Plaintiff"), and Additional Plaintiff, Hawaii Iron Workers Pension Trust Fund ("Hawaii Iron Workers" or "Additional Plaintiff" and, together with Lead Plaintiff, "Plaintiffs"), on behalf of the Class, respectfully submit this Memorandum of Law in Support of their Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion"), requesting this Court issue an Order that, *inter alia*: (1) preliminarily approves the Stipulation and Agreement of Settlement dated November 1, 2021 ("Stipulation") with Defendants, AMC Entertainment Holdings, Inc. ("AMC" or the "Company"), Adam M. Aron, Craig R. Ramsey, Chris A. Cox., Lin Zhang, Jack Q. Gao, Mao Jun Zeng, Anthony J. Saich, Lloyd Hill, Gary F. Locke, Howard W. Koch, Jr., Kathleen M. Pawlus, Citigroup Global Markets Inc. ("Citi"), Merrill Lynch, Pierce, Fenner & Smith Incorporated (n/k/a BofA Securities, Inc.), Barclays Capital Inc., and Credit Suisse Securities (USA) LLC (collectively, "Defendants" and together with Plaintiff, the "Settling Parties");[1] (2) preliminarily approves the contents and  method of distribution of the Notice of Pendency of Class Action and Proposed Settlement ("Notice") and Summary Notice set forth in the Stipulation and proposed Preliminary Approval Order; (3) preliminarily approves the contents of the Proof of Claim Form; (4) schedules a Final Approval Hearing at a date convenient for the Court but no sooner than 100 days from the filing of the Stipulation with the Court; and (5) sets deadlines for filing objections and submitting requests for exclusion from the Class, submitting Proof of Claim Forms, and filing briefs in support of the Settlement and Class Counsel's application for attorneys' fees and Litigation Expenses.

---

[1] The Stipulation and its exhibits are attached to the concurrently-filed Declaration of Laurie Rubinow ("Rubinow Decl.") as Exhibit 1.  Capitalized terms not otherwise defined herein shall have the same meaning as in the Stipulation.

## I.   **INTRODUCTION**

The Settling Parties have agreed to a proposed settlement ("Settlement") of this action for

$18,000,000.00, which will provide a substantial recovery to members of the Class.  The Class,

as defined in the Stipulation, consists of:

> All persons and entities who purchased or otherwise acquired AMC Class A
> common shares in the Company's secondary public offering ("SPO") on or about
> February 8, 2017, as well as all persons and entities who purchased or otherwise
> acquired the common stock of AMC Entertainment Holdings, Inc. (ticker symbol:
> AMC) between December 20, 2016, and August 1, 2017, both dates inclusive.
> Excluded from the Class are (i) Defendants, directors, officers and other employees
> of AMC, their families, and any entities in which any of the Defendants have a
> majority interest, the legal representatives, heirs, successors, predecessors-in-
> interest, or assigns of any of the Defendants, and the Judge(s) to whom this case is
> assigned, provided, however, that any Investment Vehicle shall not be excluded
> from the Class; and (ii) any putative members of the Class who timely and validly
> exclude themselves from the Class in accordance with the requirements set forth in
> the Notice and Rule 23 of the Federal Rules of Civil Procedure.

Stipulation, ¶ 1(e).  The proposed Settlement, if approved by the Court, will resolve all claims

asserted by Plaintiffs on behalf of the Class against Defendants and the other Released Parties

and all claims arising from the same conduct that could be asserted against Defendants and the

other Released Parties.  In light of the substantial Settlement payment and the substantial risks of

continued litigation (as to both liability and damages), Class Counsel[2] believe the proposed

Settlement is fair, reasonable, adequate, and in the best interests of the Class and should be

approved.

Class Counsel have, for well over three years, vigorously pursued relief for Plaintiffs and

the Class for damages arising out of alleged material misrepresentations and omissions by

Defendants in connection with Plaintiffs' and the Class's purchases of AMC common stock.

---

[2]"Class Counsel" refers to Miller Shah LLP, Lead Counsel in this matter, and Robbins Geller
Rudman & Dowd LLP is additional counsel for the Class.  *See* Stipulation, ¶ 1(f).

The Settling Parties agreed to the Settlement only after extensive briefing on motions to dismiss and for class certification, discovery, and arm's-length negotiations by experienced counsel, including at a private mediation. Resolving the case at this juncture allows the Settling Parties to avoid continued and costly litigation that would deplete resources which could otherwise be used for the resolution of this action, and which could result in a recovery of less than $18,000,000.00, or no recovery at all.

As set forth below, all prerequisites for preliminary approval of the Settlement are satisfied. As such, Plaintiffs' Motion should be granted and the Notice should be provided to Class Members in accordance with the Stipulation. As explained in the Stipulation and Preliminary Approval Order, the Notice will be mailed to those Class Members who may be identified through the records maintained by or on behalf of AMC, and any other potential Class Members who may be identified through reasonable efforts. The Claims Administrator will also publish the Summary Notice on *PR Newswire* or a similar national wire service, as well as a nationally-circulated newspaper, and will place the Stipulation, the Notice, the Summary Notice, and the Proof of Claim Form on a website dedicated to sharing information with Class Members and administering the Settlement. The Notice will include a toll-free telephone number to which Class Members can direct questions about the Settlement. These steps to provide notice satisfy the requirements of Rule 23 and due process and are consistent with notice plans approved by courts nationwide and implemented in similar class settlements.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Description of the Action and Procedural History

#### 1.   The Parties

Plaintiffs are two pension funds that invest and manage hundreds of millions of dollars and provide retirement benefits for thousands of members.  Operating Engineers and Hawaii Iron Workers purchased shares of AMC common stock during the Class Period and Hawaii Iron Workers purchased shares of AMC common stock pursuant to the February 2017 SPO. Plaintiffs represent a Class of similarly situated purchasers of AMC common stock.

Defendant AMC is principally involved in the theatrical exhibition business and owns, operates, or has interests in theaters located throughout the United States and Europe.  SAC, ¶¶ 31, 48.[3]  A number of officers and directors of AMC are named as Individual Defendants, *id.* ¶¶ 34–38, and several financial institutions that served as joint book-running underwriters for AMC's February 2017 SPO are named as Underwriter Defendants. *Id.* ¶ 39.

#### 2.   Procedural History

Hawaii Iron Workers filed the original class action complaint on January 12, 2018 (Dkt. 1), asserting claims under §§ 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act") and §§ 10(b) and (20)(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).  The complaint alleged that the Form S-3 registration statement for the SPO filed with the SEC, which incorporated a prospectus and prospectus supplements (the "Registration Statement") and certain of AMC's other filings with the SEC during the Class Period included material misrepresentations and omissions regarding AMC's acquisition and integration of Carmike Cinemas, Inc. ("Carmike"), Odeon and

---

[3]"SAC" refers to the operative Second Amended Complaint (Dkt. 117).

UCI Cinemas Holdings Ltd. ("Odeon"), and Nordic Cinema Group Holding AB ("Nordic"), in violation of the above-referenced sections of the Securities Act and the Exchange Act.

Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(A)(i), counsel for Hawaii Iron Workers caused notice to be issued to potential class members informing them of their right to move to serve as lead plaintiff, and Operating Engineers was one such movant.  The Court then appointed Operating Engineers as Lead Plaintiff and its counsel as Lead Counsel on May 30, 2018.  *See* Dkt. 88.

Plaintiffs filed an Amended Class Action Complaint (Dkt. 96) on August 15, 2018, which Defendants moved to dismiss on October 12, 2018 (Dkts. 106, 109).  Plaintiffs then filed the SAC on November 26, 2018 (Dkt. 117).  Defendants moved to dismiss the SAC on January 22, 2019 (Dkts. 124, 127), which Plaintiffs opposed on February 25, 2019 (Dkt. 131).  On September 23, 2019, this Court granted in part and denied in part Defendants' motions, dismissing Plaintiffs' claims under the Securities Act and the Exchange Act as to the alleged omission of information about Carmike's declining market share and Plaintiffs' claims under the Exchange Act as to the alleged misrepresentation and omission of information relating to the seasonality of the European market and Carmike's loyalty program, as well as certain other statements identified in the Court's order, and otherwise denying Defendants' motion (Dkt. 137). Defendants then answered the SAC on November 6, 2019 (Dkts. 147, 148), and the parties proceeded to discovery.

Plaintiffs moved for class certification on March 2, 2020 (Dkt. 155). The Court certified the Class over Defendants' opposition (Dkt. 163) on March 30, 2021, certifying Plaintiffs as class representatives and appointing Lead Counsel as Class Counsel (Dkt. 198).

### B.   Discovery Efforts

The Settling Parties have engaged in significant discovery efforts in this Action, including, *inter alia*, the exchange of document requests, interrogatories, and requests for admissions, and the production of documents and electronically stored information in excess of one million pages.  *See* Rubinow Decl., ¶ 6.  Plaintiffs conducted depositions of 16 fact witnesses, including corporate representatives of AMC and Citi, senior executives of AMC, including certain of the Individual Defendants, and  current and former AMC and Carmike employees with knowledge of the subjects of the alleged misrepresentations and omissions.  *See id.*  Defendants conducted depositions of Plaintiffs and the confidential witnesses cited in the SAC.  *See id.*

In addition, the Settling Parties served opening, rebuttal, and reply expert reports related to liability and damages issues.  *See id.*, ¶ 8.  The Settling Parties conducted depositions of each of the seven disclosed experts.  *See id.*

### C.   Settlement Discussions

While litigating this Action, certain of the parties engaged in discussions regarding potential resolutions to provide relief to the Class.  During the pendency of these negotiations, the parties communicated their positions regarding Plaintiffs' likelihood of success on their claims and the associated potential damages.  As part of this process, Class Counsel conferred with experts to analyze the claims at issue in this Action. Certain of the parties agreed to and held a private mediation on November 18, 2020, with David Geronemus, Esquire, of JAMS (the "Mediator"), and exchanged mediation statements regarding their respective positions.  Although they did not reach agreement on a resolution of the Action during the mediation, the parties continued to discuss resolution with the Mediator as they proceeded with fact and expert

discovery.  Finally, after significant advancement of the Action and as the parties were preparing

for summary judgment motions (Dkt. 204), they reached an agreement in principle on September

2, 2021 to settle the Action.  The parties informed the Court of the resolution on September 3,

2021, upon which the Court set deadlines for the filing of preliminary approval papers and a

status update (Dkt. 207).

      The Settling Parties then worked to reduce the agreement to writing, achieving and

concluding those efforts with the Stipulation and its exhibits, executed by all Settling Parties on

November 1, 2021, and filed herewith.

      **D.**      **The Proposed Settlement**

      The Stipulation provides that AMC, on behalf of all Defendants, shall cause its insurers

to make payment in an aggregate amount of $18,000,000.00 into a "qualified settlement fund,"

within the meaning of Treasury Regulation § 1.468B-1, 26 C.F.R. § 1.468B-1, to be allocated to

Class Members following deduction for Notice and Administration Costs, Taxes and any

awarded attorneys' fees and Litigation Expenses pursuant to the Plan of Allocation.  Stipulation,

¶ 2, 18.  In exchange, Plaintiffs and Class Members will dismiss their claims, as set forth more

fully in the Stipulation.  Stipulation, § IV.  The Stipulation and the proposed Preliminary

Approval Order also set forth a proposed Notice plan and provide for the payment of attorneys'

fees and Litigation Expenses, all of which are subject to the Court's approval.  Stipulation, ¶ 28

(Notice), § VIII (Attorneys' Fees and Expenses), Ex. A (proposed Preliminary Approval Order).

      **E.**      **Proposed Timetable for Effectuation of the Settlement**

      The Settling Parties respectfully request that the Court schedule a Final Approval Hearing

at or after which the Court will be asked to make a determination, pursuant to Rule 23, as to

whether the Settlement is fair, reasonable, and adequate to settle Plaintiffs' Released Claims

against Defendants and the other Released Parties, and whether the Court should approve the proposed Settlement.

Plaintiffs respectfully propose the following schedule associated with the Notice plan and Final Approval Hearing:

| Event | Reference to [Proposed] Preliminary Approval Order (Stipulation, Ex. A) | Proposed Deadline |
|---|---|---|
| Preliminary approval hearing | | To the extent the Court deems necessary, a date convenient for the Court within 30 days from the date the motion for preliminary approval of the class settlement is filed |
| AMC's transfer agent to provide Class Member data to Claims Administrator | ¶ 7(a) | Within 10 calendar days of the entry of Preliminary Approval Order |
| Send Settlement Notice and Proof of Claim Form to Class Members | ¶ 7(b) | Within 21 calendar days of the entry of Preliminary Approval Order (the "Notice Date") |
| Set up class settlement website containing litigation and Settlement papers and toll-free number for Class Member inquiries | ¶ 7(d) | Within 3 calendar days following the Notice Date |
| Publish Summary Notice via *PR Newswire* or similar national wire service and nationally-circulated newspaper | ¶ 7(c) | Within 7 calendar days following the Notice Date |
| File Affidavit of person(s) who mailed Notice and published Summary Notice | ¶ 9 | Not later than 35 calendar days before final approval hearing |
| Deadline for filing papers in support of the Settlement, Plan of Allocation, or Fee and Expense Award | ¶ 11 | Not later than 35 calendar days before the Final Approval Hearing |

| Deadline for filing papers opposing the Settlement, Plan of Allocation, or Fee and Expense Award | Stipulation ¶ 33 | Not later than 21 calendar days before the Final Approval Hearing |
|---|---|---|
| Deadline to send requests for exclusion to Claims Administrator | Stipulation ¶ 34 | Not later than 21 calendar days before Final Approval Hearing |
| Deadline for filing reply papers in further support of the Settlement, Plan of Allocation, or Fee and Expense Award | ¶ 11 | Not later than 7 calendar days before the Final Approval Hearing |
| Final Approval Hearing | ¶ 10; *see also* Stipulation, ¶ 36 | On a date convenient for the Court but no sooner than 100 calendar days after filing the motion for preliminary approval |

## III.   **THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL**

"Courts in this Circuit recognize a strong judicial policy in favor of settlements, particularly in the class action context." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A.*, 396 F.3d 96, 116 (2d Cir. 2005)) (internal quotation marks omitted); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions."). The Settlement and Stipulation are emblematic of the compromise favored by courts in this District and Circuit.

### A.   **Standard of Review**

Rule 23(e) requires judicial approval for the settlement of class claims. Judicial review of a proposed class action settlement consists of a two-step process: (1) preliminary approval; and (2) a subsequent fairness hearing for final approval. *See* Fed. R. Civ. P. 23(e). In determining whether to grant preliminary approval, the Court must determine whether "giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the

proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R.C Civ. P. 23(e)(1)(B)(i-ii); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019).

Preliminary approval is not a final determination.  Rather, a full evaluation is made at the final approval stage, following notice of the settlement to class members.  *See In re Prudential*, 163 F.R.D. at 210.  Plaintiffs now simply request that the Court take the first step in the settlement approval process and preliminarily approve the Settlement so that notice of the Settlement can be given to the Class.  *See, e.g.*, *Torres v. Gristedes Operating Corp.*, No. 04 Civ. 3316, 2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010).

**B.      The Court is Likely to Grant Final Approval of the Proposed Settlement**

"To be likely to approve a proposed settlement under Rule 23(e)(2), the Court must find 'that it is fair, reasonable, and adequate.'" *I n re GSE Bonds*, 414 F. Supp. 3d at 692.  This inquiry includes four explicit factors enumerated in Rule 23(a): (1) adequacy of representation; (2) existence of arm's-length negotiations; (3) adequacy of relief; and (4) equitableness of treatment of class members, as well as the familiar *Grinell* factors.[4]  *See id.*; *see also In re IPO Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007) ("Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does

---

[4] The *Grinell* factors are: (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *See City of Detroit v. Grinell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

not improperly grant preferential treatment to class representatives or segments of the class and

falls within the range of possible approval, preliminary approval is granted.").

### 1. The Rule 23(e)(2) Factors Weigh in Favor of Preliminary Approval

#### i. Adequacy of Representation

"Rule 23(e)(2)(A) requires a Court to find that 'the class representatives and class

counsel have adequately represented the class' before preliminarily approving a settlement." *In*

*re GSE Bonds*, 414 F. Supp. 3d at 692. The adequacy determination includes inquiries into both

the plaintiff and his or her counsel. *See id*. Here, Plaintiffs and Class Counsel clearly satisfy the

requirements of Rule 23(e)(2)(A). First, Plaintiffs' interests are neatly aligned with all other

members of the Class because they all purchased or acquired shares of AMC common stock in

the SPO and/or during the Class Period, and suffered injuries of the same kind as a result of the

alleged material misrepresentations and omissions. Second, Class Counsel and additional

counsel are "qualified, experienced, and able" to conduct the litigation, as demonstrated by their

successful prosecution of numerous complex securities actions and the outstanding result

achieved here after significant motion practice, fact and expert discovery, and the class

certification process. *See id*.

#### ii. The Settlement is the Result of Good Faith, Arm's-Length Negotiations by Well-Informed and Experienced Counsel

Under Rule 23(e)(2)(B), "[i]f a class settlement is reached through arm's-length

negotiations between experienced, capable counsel knowledgeable in complex class litigation, [a

settlement] will enjoy a presumption of fairness." *In re GSE Bonds*, 414 F. Supp. 3d at 693; *see*

*also Wal-Mart Stores*, 396 F.3d at 116 (noting a strong "presumption of fairness" where a

settlement is a product of arm's-length negotiations conducted by experienced, capable counsel

after meaningful discovery); *In re Flag Telecom Holdings Ltd. Sec. Litig.*, No. 02-CV-3400,

-11-

2010 WL 4537550, at *13 (S.D.N.Y. Nov 8, 2010) (same).  Here, the Stipulation was negotiated at arm's-length, over the course of several months, by adverse parties, each represented by counsel experienced in complex securities litigation.  As discussed above, the parties communicated their respective positions concerning Plaintiffs' likelihood of success on their claims and potential recovery and conducted independent analyses to support the Settlement. *See* Rubinow Decl. ¶ 7.  Indeed, when the parties were unable to resolve the Action following the first mediation, they continued to engage in substantial additional fact and expert discovery to develop and clarify the issues.  Further, as demonstrated by the repeated rounds of briefing on Defendants' motions to dismiss, Plaintiffs' class certification motion, and the meaningful settlement negotiations, there has been no collusion or complicity of any kind in connection with the Settlement or related negotiations.  *See id.*

Moreover, in determining whether the Settlement was entered into in good faith, the Court should consider the judgment of Class Counsel.  *See, e.g., In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695, 2007 WL 4115809, at *12 (S.D.N.Y. Nov. 7, 2007) (courts should "consider the opinion of experienced counsel with respect to the value of the settlement"); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."), *aff'd*, 117 F.3d 721 (2d Cir. 1997).  Class Counsel and additional counsel have significant experience in similar litigation, are well-informed as to the specifics of this Action, and worked closely with Plaintiffs throughout the course of the Action. Accordingly, their judgment that the Settlement is in the best interest of the Class should be given considerable weight.

iii.    Adequacy of Relief

In assessing the adequacy of relief accorded by a proposed settlement, under Rule

23(e)(2)(C), courts must consider the following:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any
> proposed method of distributing relief to the class, including the method of
> processing class-member claims, if required; (iii) the terms of any proposed award
> of attorney's fees, including timing of payment; and (iv) any agreement required to
> be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C).  The adequacy inquiry under Rule 23(e)(2)(C) significantly overlaps

with *Grinnell* factors 1, 4, 5, and 6, "which help guide the Court's application of Rule

23(e)(2)(C)(i)."  *In re GSE Bonds*, 414 F. Supp. 3d at 693.

### a.    The costs, risks, and delay of trial and appeal

"[I]n evaluating the settlement of a *securities* class action, federal courts, including this

Court, have long recognized that such litigation is notably difficult and notoriously uncertain."

*In re Marsh & McLennan Cos. Inc., Sec. Litig.*, No. 04 Civ. 8144(CM), 2009 WL 5178546, at *5

(S.D.N.Y. Dec. 23, 2009) (quoting *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y.

1999)) (emphasis in original).  New precedents are frequently issued, and the demands on

counsel and courts are complex, requiring the devotion of significant resources.  The prosecution

of this Action and the risks that Plaintiffs face in establishing liability and damages, as well as

maintaining class certification through trial, overwhelmingly support preliminary approval.

Indeed, absent settlement, the Settling Parties would begin briefing substantial summary

judgment and *Daubert* motions, any trial would be complex given the legal issues relevant to

Plaintiffs' allegations, and, even if Plaintiffs prevailed, it could be years before any recovery

would be received in light of possible appeals.  Because of "the lengthy, costly, and uncertain

course of further litigation, the settlement provides a significant and expeditious route to

recovery for the Class," and "it may be preferable 'to take the bird in the hand instead of the prospective flock in the bush.'" *In re Prudential*, 163 F.R.D. at 210 (quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974)).  Moreover, because continued litigation increases litigation expenses, it could ultimately result in a smaller recovery to the Class, even ignoring the time value of money.

      Plaintiffs' pursuit of recovery of the losses resulting from the course of conduct alleged in this Action began in January 2018, nearly four years ago.  Since then, the Settling Parties have acquired extensive knowledge and information about the claims and defenses relevant to the Action, sufficient to evaluate the "the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002); *see also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004).  The thorough investigation undertaken by Class Counsel and additional counsel here, coupled with the significant discovery conducted in this Action, has afforded Class Counsel a significant understanding of the merits of the claims asserted, the strength of Defendants' defenses, and the values of theoretical outcomes of the case, which is reflected by, *inter alia*, the rounds of briefing on Defendants' motions to dismiss and Plaintiffs' class certification motion and the Settling Parties' meaningful settlement negotiations.  In addition, Class Counsel relied on expert analysis in assessing the claims, defenses, and potential damages, which supports a finding that Plaintiffs had adequate information in connection with their negotiations and evidentiary support for the Settlement.  *See In re GSE Bonds*, 414 F. Supp. 3d at 699; *Plummer v. Chem. Bank*, 668 F.2d 654, 659 (2d Cir. 1982).

The record in these proceedings and the law—as reflected by the Court's dismissal of several of Plaintiffs' claims—confirm the risks of establishing liability and damages.  In order to succeed on the merits, Plaintiffs not only would need to establish that statements were materially misleading or omitted material information and caused Plaintiffs' losses, but also overcome Defendants' affirmative defenses.  Moreover, absent the Settlement, Defendants stated their intent to move for summary judgment and undoubtedly would mount vigorous defenses to liability and damages at the trial phase if their motions for summary judgment were unsuccessful.  Such defenses would likely include, *inter alia*, arguments based upon the disclosure of the alleged omissions in the Registration Statement and other public filings and statements, Defendants' performance of reasonable due diligence in connection with the Registration Statement, and that they did not cause any of Plaintiffs' alleged losses.  The summary judgment and trial stages would involve extensive briefing and motion practice and significant competing expert testimony, all of which pose risks to Plaintiffs' ability to establish liability.  Moreover, even if Plaintiffs established liability at trial, there is a substantial risk that a jury could accept Defendants' damages arguments and award far less than the funds secured by the Settlement, or nothing at all.

> b.  *The effectiveness of the proposed method of distributing relief*

Here, the Stipulation and Plan of Allocation provide for a notice and claims process designed to ensure relief is effectively accorded to Class Members.  Because the Class is comprised of purchasers and acquirers of AMC common stock during the Class Period, including pursuant to the Company's SPO, the parameters necessary to administer the Settlement are clearly defined and membership of the Class is readily ascertainable through the records available to AMC, their transfer agent(s), or otherwise.  Administration of the Settlement here

will effectively "deter or defeat unjustified claims," without being "unduly demanding." *In re GSE Bonds*, 414 F. Supp. 3d at 694 (citing Fed. R. Civ. P. 23, Adv. Comm. Note, 2018 amend., sub. (e)(2)(c)). Additionally, "while the plan of allocation must be fair and adequate, it need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Id.* (internal quotation marks omitted). As discussed in greater detail below, the Plan of Allocation is designed to provide *pro rata* recovery to Class Members according to the quantity and timing of their purchase or acquisition of AMC common stock during the Class Period, including pursuant to the SPO. The Plan of Allocation represents a reasonable method of ensuring "the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund." *Id.* at 695.

### c. The terms of the proposed award of attorneys' fees

As stated in the proposed Notice (Stipulation, Ex. A-1), Class Counsel will request not more than one-third of the Settlement Fund as an award of attorneys' fees. Class Counsel also intends to apply for the payment of expenses paid or incurred in connection with the prosecution and resolution of the Action in an amount not to exceed $1,300,000.00, as well as for reimbursement of litigation-related expenses of Plaintiffs not to exceed $15,000.00 in the aggregate. *See* 15 U.S.C. § 78u-4(a)(4). This request is consistent with this Court's common practice, as courts in this district routinely approve fees as high as 33.5% in complex class cases, excluding expenses. *See In re GSE Bonds*, 414 F. Supp. 3d at 695. In addition, pursuant to Rule 23(e)(3), the Stipulation describes a Supplemental Agreement executed by Class Counsel and counsel for the AMC Defendants that provides the AMC Defendants with an option to terminate the Settlement (which would terminate the Settlement as to all Defendants) in the event that Class Members who collectively hold shares of AMC stock equal to or in excess of the Opt-Out

Threshold timely and validly request exclusion from the Class in accordance with the terms of the Stipulation.  *See* Stipulation ¶ 39; *see also Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-cv-1152-M, 2018 WL 1942227, at *5 (N.D. Tex. Apr. 25, 2018) (approving settlement where stipulation described a "supplemental confidential agreement" between the parties that gave defendant the right to terminate the settlement if valid opt-outs exceeded a specified threshold).  Class Counsel are aware of no other agreements required to be disclosed under Rule 23(e)(3).

### 2.   The Remaining *Grinell* Adequacy Factors Weigh In Favor Of Preliminary Approval

As discussed above, the Second Circuit has traditionally relied upon the nine factors identified in *Grinell* to guide a district court's determination of whether to finally approve a class action settlement.  To the extent that they are applicable at this stage, they can be used as guidelines for considering preliminary approval.  *See In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515, 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008).  Complete analysis of these factors is not required for preliminary approval to be granted.  *See id*. (citing *In re Prudential*, 163 F.R.D. at 210).  Moreover, because several of these factors are addressed in the analysis under Rule 23(e)(2), the discussion that follows will focus on the relevant non-overlapping *Grinnell* factors: (i) the reaction of the class to the settlement; (ii) the ability of Defendants to withstand a greater judgment; and (iii) the range of reasonableness of the Settlement in light of the best possible recovery and attendant risks.

#### i.   The Reaction of the Class to the Settlement

"The Court need not consider [this factor], which requires the Court to evaluate the reaction of the [] class, because consideration of this factor is generally premature at the preliminary approval stage." *In re GSE Bonds*, 414 F. Supp. 3d at 699 (citing *In re Warner*

*Chilcott*, 2008 WL 5110904 at *2).  In any event, Plaintiffs have actively monitored this action, were aware of settlement negotiations, and approve of the Stipulation.  *See* Rubinow Decl., ¶ 3.  Members of the Class will have the opportunity to share their reactions to the Settlement, including by filing objections and requesting exclusion from the Class, pursuant to the Notice plan and final approval procedures.

        ii.    The Ability of Defendants to Withstand a Greater Judgment Does Not Weigh Against Preliminary Approval

While there is no evidence that Defendants could not withstand a greater judgment, courts have regularly held that "against the weight of the remaining factors, this fact alone does not undermine the reasonableness of [a settlement]."  *In re GSE Bonds*, 414 F. Supp. 3d at 696; *see also In re AOL Time Warner ERISA Litig.*, 2006 WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006) (finding that "the mere ability to withstand a greater judgment does not suggest that the Settlement is unfair[.]" Rather, this factor "must be weighed in conjunction with all of the Grinnell factors, most notably the risk of the class prevailing and the reasonableness of the settlement fund.") (internal quotation marks omitted).  It is not immaterial to note that AMC's business has been impacted by the COVID-19 pandemic and the continuing impact of the pandemic on AMC's business bears on this factor.  Indeed, under all of the circumstances, it is far from assured that Plaintiffs would be able to collect their best-case judgment after trial and appeals have been exhausted, even without considering the risks discussed above.

        iii.    The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and Attendant Risks Support Preliminary Approval

"In considering these facts, the settlement amount's ratio to the maximum potential recovery need not be the sole, or even the dominant, consideration when assessing the settlement's fairness."  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 495

(S.D.N.Y. 2018).  In fact, courts in this Circuit have approved of settlements where the plaintiffs did not offer a damages estimate, *see id.*, noting that "some risks would be attendant upon continuing to litigate."  *In re GSE*, 414 F. Supp. 3d at 696; *In re Flag Telecom II*, 2010 WL 4537550, at *20 ("[T]he issue for the Court is not whether the Settlement represents the 'best possible recovery,' but how the Settlement relates to the strengths and weaknesses of the case."). Furthermore, "in any case, there is a range of reasonableness with respect to a settlement."  *Id*. (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  This range of reasonableness "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Newman*, 464 F.2d at 693.

Based on a commonly-accepted methodology (*i.e.*, an event study), Plaintiffs' expert determined that the information allegedly misstated and omitted was economically material and that the decline in AMC stock following the disclosure of this information represents the actual loss per share suffered by investors and provides a measure of the artificial inflation present in the price of the stock throughout the Class Period.  Plaintiffs' expert further determined that the market price of AMC stock was artificially inflated by $1.11 per share throughout the Class Period and, thus, Plaintiffs' expert calculated that investors who purchased AMC stock when the price was artificially inflated and held it beyond the corrective disclosure event suffered actual economic losses of $1.11 per share.  Rubinow Decl., ¶ 8 n.3.  Actual losses are different for every investor, and thus the damage calculation would be subject to the factfinder's determinations with respect to several significant variables.  For instance, the factfinder must determine the correct measure by which AMC's stock was artificially inflated, as there are a number of factors that determine stock price.  Defendants would argue that the decline in stock

price was attributable to other factors, not the corrective disclosure, to achieve a reduced

damages calculation.  And, of course, all of these figures presuppose a finding of liability.

Regardless, at $18,000,000.00, the Settlement recovery is quite significant, as it would

represent a greater than 40% recovery rate at the low end of Plaintiffs' damages calculations and

greater than 10% of the high end (which does not account for any negative causation offset),

each inclusive of interest.  This recovery rate range sits comfortably within – indeed, at the very

high end of – those accepted by other courts in this Circuit.  *See, e.g.*, *In re GSE Bonds*, 414 F.

Supp. 3d at 697 (13–17%); *In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409,

2006 WL 3247396, at *6 (S.D.N.Y. Nov. 8, 2006) (10–15%); *In re Interpublic Sec. Litig.*, No.

02 CIV.6527(DLC), 2004 WL 2397190, at *8 (S.D.N.Y. Oct. 26, 2004) (10–20%); *In re Sturm,*

*Ruger, & Co., Inc. Sec. Litig.*, No. 3:09CV1293 VLB, 2012 WL 3589610, at *7 (D. Conn. Aug.

20, 2012) (3.5%).  *See also Wilson v. DirectBuy, Inc.*, No. 3:09-CV-590JCH, 2011 WL 2050537,

at *13 (D. Conn. May 16, 2011) ("the Second Circuit has long held that even settlements which

represent a fraction of the best possible result may be appropriate in light of the risks associated

with bringing such claims") (citing *Grinnell*, 495 F.2d at 455 n.2); *In re Am. Bank Note*

*Holographics, Inc.*, 127 F. Supp. 2d 418, 428 (S.D.N.Y. 2001) ("there is no reason, at least in

theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part

of a single percent of the potential recovery.") (citing *Grinnell*, 495 F.2d at 455 n.2).

## IV.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED

In addition to preliminarily approving the proposed Settlement, the Court must approve

the proposed means of notifying Class Members.   *See* Fed. R. Civ. Proc. 23(c)(2); *see also In re*

*Global Crossing*, 225 F.R.D. at 448. "Adequate notice is essential to securing due process of law

for the class members, who are bound by the judgment entered in the action." *Id*.  In order to

satisfy due process considerations, notice to Class Members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996).

The Notice plan includes multiple components designed to reach the largest number of Class Members possible. First, the Notice will be sent by first-class mail to the last known address of each Class Member identifiable through reasonable effort no later than 21 days after entry of the Preliminary Approval Order. Additionally, the Notice will be posted on a website established by the Claims Administrator at the direction of Class Counsel, along with other documents related to the litigation such as the Proof of Claim Form and the Stipulation with all of its exhibits. The Notice will also provide contact information for Class Counsel. Furthermore, Class Counsel will cause the Summary Notice to be published on *PR Newswire* or a similar national wire service, and will also maintain and monitor a toll-free telephone number for the purpose of fielding any inquiries related to the Settlement by member of the Class.

The Notice agreed to by the Settling Parties satisfies all due process considerations and meets the requirements of Rule 23(e). It describes in plain English: (i) the terms and operation of the Settlement; (ii) the nature and extent of the Released Claims; (iii) the maximum attorneys' fees and Litigation Expense awards that may be sought; (iv) the procedure and timing for objecting to the Settlement or requesting exclusion from the Class; and (v) subject to the Court's schedule, the date and location of the Final Approval Hearing. This Court and numerous district courts across the country have approved as fair similar notices. *See, e.g.*, *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 166 (S.D.N.Y. 2007) (concluding that a

substantially similar Notice of proposed settlement was reasonable); *Griffin v. Flagstar Bancorp, Inc.*, 2:10-cv-10610, 2013 WL 4779017, at *3 (E.D. Mich. July 29, 2013) (adopting a substantially similar notice plan).

## V.   THE PLAN OF ALLOCATION SHOULD BE PRELIMINARY APPROVED

To warrant approval, a plan of allocation must be fair and adequate.  *See In re Facebook, Inc.*, 343 F. Supp. 3d at 414.  "The formula established for allocation need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."  *Id.*; *see also Guevoura Fund Ltd. v. Silverman*, Nos. 1:15-cv-07192-CM and 1:18-cv-09784-CM, 2019 WL 6889901, at *10 (S.D.N.Y. Dec. 18, 2019) ("Courts have recognized that the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information.") (internal quotation marks omitted).  "[W]hether the allocation plan is equitable is squarely within the discretion of the district court."  *Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-cv-42 (JG) (VVP), 2015 WL 6964973, at *7 (E.D.N.Y. Nov. 10, 2015) (citing *In re PaineWebber P'ships*, 171 F.R.D. at 132-33 (internal citations and punctuation omitted)).

Here, "Plaintiffs' Plan of Allocation was prepared by experienced counsel along with a damages expert – both indicia of reasonableness."  *In re Facebook, Inc.*, 343 F. Supp. 3d at 414. Indeed, the Plan of Allocation provides for *pro rata* distribution of the Net Settlement Fund among Class Members according to the amount and timing of each Class Member's purchase or acquisition of AMC common stock during the Class Period, including pursuant to the SPO.  *See* Stipulation, Ex. A-1 ¶ 32.  This Court regularly approves plans of allocation where, as here, "[a plan] provides recovery to [c]lass members, net of administrative expenses and attorneys' fees

and expenses, on a *pro rata* basis." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010) (emphasis added); *see also In re AOL Time Warner*, 2006 WL 903236 at *17 (plan of allocation provided "recovery to damaged investors on a pro- rata basis according to their recognized claims of damages."). The proposed plan of allocation also provides an additional recognized loss for shares with a claim under both the Securities Act and the Exchange Act, which reflects Class Counsel's determination that, although the damages alleged to be actionable under each statute generally relate to similar alleged misconduct and the same stock price declines, the Securities Act claims add value to the overlapping Exchange Act claims because they do not require certain showings that the Exchange Act claims require, making such claims more likely to prevail if ultimately litigated to a conclusion. In sum, the Plan of Allocation is substantially similar to plans of allocation approved and utilized similar securities actions. *See, e.g.*, *In re Facebook, Inc.*, 343 F. Supp. 3d at 414–15; *In re Global Crossing*, 225 F.R.D. at 462.

VI.   **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court preliminarily approve the Settlement, set a date for the Final Approval Hearing, and enter the accompanying proposed Preliminary Approval Order.

Dated: November 1, 2021                Respectfully submitted,

                                       MILLER SHAH LLP

                                       /s/ Laurie Rubinow
                                       James E. Miller
                                       Laurie Rubinow
                                       65 Main Street
                                       Chester, CT 06412
                                       Telephone: (860) 526-1100
                                       Facsimile: (866) 300-7367
                                       Email: jemiller@millershah.com
                                              lrubinow@millershah.com

James C. Shah
Jayne A. Goldstein
Eric L. Young
Bruce D. Parke
Alec J. Berin
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (610) 891-9880
Facsimile: (866) 300-7367
Email: jcshah@millershah.com
        jagoldstein@millershah.com
        elyoung@millershah.com
        bdparke@millershah.com
        ajberin@millershah.com

*Attorneys for Lead Plaintiff, the
International Union of
Operating Engineers Pension Fund of
Eastern Pennsylvania and Delaware, and
the Class*

ROBBINS GELLER RUDMAN &
DOWD LLP

Samuel H. Rudman
David A. Rosenfeld
Christopher T. Gilroy
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: (631) 367-7100
Facsimile: (631) 367-1173
Email: srudman@rgrdlaw.com
        drosenfeld@rgrdlaw.com
        cgilroy@rgrdlaw.com

*Attorneys for Plaintiff, Hawaii Iron Workers
Pension Trust Fund, and the Class*