**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| HAWAII STRUCTURAL IRONWORKERS | : | No. 1:18-cv-00299-AJN-SLC |
| PENSION TRUST FUND, Individually and on | : | |
| Behalf of All Others Similarly Situated, | : | Final Approval Hearing: |
| | : | February 10, 2022 at 3:00 PM |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| AMC ENTERTAINMENT HOLDINGS, INC., | : | |
| *et al.*, | : | |
| | : | |
| Defendants. | : | January 6, 2022 |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

Table of Authorities ...................................................................................................... iii

I.  INTRODUCTION ................................................................................................. 1

II. BACKGROUND ................................................................................................... 2

    A.  Factual Background and Procedural History ............................................ 2

    B.  Settlement Discussions ............................................................................ 5

    C.  The Settlement ......................................................................................... 6

        1.  Settlement Fund and Released Claims.............................................. 6

        2.  Distribution of Settlement Funds to Class Members ....................... 6

    Preliminary Approval ........................................................................................ 7

III. THE SETTLEMENT WARRANTS FINAL APPROVAL.................................. 8

    A.  The Settlement is Procedurally Fair......................................................... 9

    B.  The Settlement is Substantively Fair ...................................................... 11

        1.  The Expense, Complexity and Likely Duration of Further Litigation
            Weigh in Favor of Final Approval............................................... 12

        2.  The Favorable Reaction of the Class Supports Final Approval............... 12

        3.  The Advanced Stage of the Proceedings Supports Final Approval.......... 13

        4.  There are Substantial Risks of Establishing Liability and Damages, and
            Maintaining Class Certification Through Trial........................................ 14

        5.  The Ability of Defendants to Withstand a Greater Judgment is of Little
            Consequence to Final Approval.............................................................. 17

        6.  The Settlement is Within the Range of Reasonableness in Light of the
            Best Possible Recovery and all Attendant Risks of Litigation ................ 18

        7.  The Remaining Rule 23(e)(3) Factors are Satisfied ................................ 20

IV. THE CLASS NOTICE PLAN INFORMED THE CLASS OF THE SETTLEMENT
    AND SATISFIED DUE PROCESS .................................................................. 21

V.      THE PLAN OF ALLOCATION SHOULD BE APPROVED ........................................ 23

VI.     CONCLUSION ............................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981) ................................................................................................................ 8

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ................................................................................. 1, 11, 14, 19

*City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.*,
  954 F. Supp. 2d 276 (S.D.N.Y. 2013) .................................................................................. 1

*City of Providence v. Aeropostale, Inc.*,
  2014 WL 1883494 (S.D.N.Y. May 9, 2014) ................................................................. 12, 13

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) .............................................................................................. 9, 12

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ............................................................................................................ 21

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) .................................................................. 20

*Guevoura Fund Ltd. v. Silverman*,
  2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ................................................................... 23

*IBEW Local 90 Pension Fund v. Deutsche Bank AG*,
  2013 WL 5815472 (S.D.N.Y. Oct. 29, 2013) ................................................................... 17

*In re Advanced Battery Techs. Secs. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ....................................................................................... 22

*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ............................................................................... 19

*In re AOL Time Warner, Inc.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ......................................................... 13, 14, 17, 24

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) .................................................................................. 12

*In re Bear Stearns Cos. Secs., Derivative, & ERISA Litig.*,
  909 F. Supp. 2d at 267 (S.D.N.Y. 2012) ........................................................................... 13

*In re Currency Conversion Fee Antitrust Litig.*,
   2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) ........................................................... 19

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   343 F. Supp. 3d 394 (S.D.N.Y. 2018) ........................................................... 8, 23, 24

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ........................................................... 18

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. Nov. 24, 2004) ........................................................... 14, 15, 24

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019) ........................................................... passim

*In re Interpublic Sec. Litig.*,
   2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ........................................................... 19

*In re LIBOR-Based Financial Instruments Antitrust Litig.*,
   327 F.R.D. 483 (S.D.N.Y. 2018) ........................................................... 17, 18

*In re Marsh & McLennan Cos. Inc., Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ........................................................... 14

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................... 24

*In re Paine Webber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ........................................................... 9, 10, 12

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ........................................................... 8, 14, 18

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
   827 F.3d 223 (2d Cir. 2016) ........................................................... 10

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ........................................................... 8, 15

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.*,
   2012 WL 3589610 (D. Conn. Aug. 20, 2012) ........................................................... 19

*In re Sumitomo Copper Litig.*,
   189 F.R.D. 274 (S.D.N.Y. 1999) ........................................................... 14

*In re Veeco Instruments Inc. Sec. Litig.*,
   2007 WL 4115809 (S.D.N.Y. Nov.7, 2007) ........................................................... 10

*Lobur v. Parker*,
   378 F. App'x 63 (2d Cir. 2010) .......................................................................... 13

*Lyons v. Marrud, Inc.*,
   1972 WL 327 (S.D.N.Y. June 6, 1972) ............................................................9-10

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................................... 15

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972)................................................................................. 18

*Oppenlander v. Standard Oil Co.*,
   64 F.R.D. 597 (D. Colo. 1974) ............................................................................ 15

*Parker v. Time Warner Entm't Co.*,
   631 F. Supp. 2d 242 ............................................................................................ 13

*Plummer v. Chem. Bank*,
   668 F.2d 654 (2d Cir. 1982)................................................................................. 16

*Shapiro v. JP Morgan Chase & Co.*,
   2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ..................................................... 15

*Thompson v. Metro. Life Ins. Co.*,
   216 F.R.D. 55 (S.D.N.Y. 2003) ......................................................................9, 11

*Wal-Mart Stores, Inc. v. Visa U.S.A.*,
   396 F.3d 96 (2d Cir. 2005).......................................................................... passim

*Wilson v. DirectBuy, Inc.*,
   2011 WL 2050537 (D. Conn. May 16, 2011)....................................................... 19

**Statutes**

15 U.S.C. §77z-1(a)(4).................................................................................................. 20

15 U.S.C. § 77z-1(a)(7) ................................................................................................. 21

15 U.S.C. §78u-4(a)(4) .................................................................................................. 20

15 U.S.C. § 78u-4(a)(7) ................................................................................................. 21

15 U.S.C. § 78u-4(f)(7) ................................................................................................. 12

**Rules**

Fed. R. Civ. P. 23 .............................................................................................. 1, 11, 23

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................................ 21, 22

Fed. R. Civ. P. 23(e) ........................................................................................................... 8, 21

Fed. R. Civ. P. 23(e)(1) ........................................................................................................... 20

Fed. R. Civ. P. 23(e)(1)(B) ..................................................................................................... 20

Fed. R. Civ. P. 23(e)(2) ........................................................................................................... 14

Fed. R. Civ. P. 23(e)(2)(A) ..................................................................................................... 10

Fed. R. Civ. P. 23(e)(3) ........................................................................................................... 20

I.    **INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 23 and in accordance with the Court's Order

Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement dated

November 2, 2021 and entered on November 8, 2021 ("Preliminary Approval Order"), Lead

Plaintiff, the International Union of Operating Engineers Pension Fund of Eastern Pennsylvania

and Delaware ("Operating Engineers" or "Lead Plaintiff"), and Additional Plaintiff, Hawaii Iron

Workers Pension Trust Fund ("Hawaii Iron Workers" or "Additional Plaintiff" and, together

with Lead Plaintiff, "Plaintiffs"), on behalf of the Class, respectfully submit this Memorandum

of Law in Support of their Unopposed Motion for Final Approval of Class Action Settlement

(the "Motion"), requesting that this Court issue an Order that finally approves the Settlement as

set forth in the Stipulation and Agreement of Settlement dated November 1, 2021 ("Stipulation")

resolving all claims in this Action against Defendants.[1]

The Settlement is an excellent result for the Class and is both procedurally and

substantively fair under the factors articulated in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448,

463 (2d Cir. 1974).  Plaintiffs (in consultation with their damages expert) estimate that the

proposed Settlement provides between 10% and 40% of potential recoverable damages, which is

well above recovery rates achieved in similar securities class actions that have been approved by

courts in this District.  *See, e.g., City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.*,

954 F. Supp. 2d 276, 280 (S.D.N.Y. 2013) (granting final approval of settlement that was "10%

of the plaintiff's best-case damages model").  In addition, the merit of the Settlement is

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning as in the Stipulation
and Agreement of Settlement ("Stipulation") dated November 1, 2021 (ECF No. 214-1).

demonstrated by the fact that, to date, no Class Members have objected to the Settlement or sought exclusion from the Class.

The Settlement is entitled to a presumption of fairness because it is the result of arm's-length negotiations between highly experienced counsel, which included a two-day mediation session under the auspices of David Geronemus of JAMS in November 2020 and periodic subsequent negotiations between the parties while active litigation continued.  Indeed, the Settlement followed well over three years of vigorous litigation by Plaintiffs and their counsel, including *inter alia*: (a) a lengthy investigation of Plaintiffs' claims on behalf of the Class, including the review and analysis of publicly available information regarding Defendants and the subject matters of this litigation (*e.g.*, SEC filings, financial and press articles, analyst reports and presentations, press releases, earnings conference calls, and trading data); (b) carefully drafting a detailed complaint and two amended complaints; (c) consulting with investigators and experts concerning Defendants' potential liability; (d) consulting with a damages expert to evaluate recoverable losses; (e) opposing and prevailing in part against Defendants' motion to dismiss; (f) successfully moving for class certification, which included several expert and fact depositions; (g) engaging in comprehensive merits and expert discovery, which included 16 depositions of party-affiliated fact witnesses, depositions of the confidential witnesses cited in the Second Amended Complaint, and depositions of seven expert witnesses, as well as the review and analysis of over one million pages of documents; (k) participating in a two-day mediation session and submitting briefs and supplemental information to the mediator; (l) successfully negotiating the Settlement over the course of several months while active discovery continued in full; and (m) finalizing the terms of the Stipulation with Defendants.

In light of the substantial benefits made available by the Settlement, and in order to avoid continued and costly litigation that would deplete resources which could otherwise be used for the resolution of this Action, and which could result in a recovery of less than $18,000,000, or no recovery at all, Plaintiffs request that the Court grant final approval of the Settlement, finally certify the Class, approve the Plan of Allocation, and enter a final judgment[2] dismissing with prejudice the claims against Defendants and directing the Settling Parties to effectuate the Settlement consistent with its terms.

## II.   BACKGROUND

### A.   Factual Background and Procedural History

This Action was first filed on January 12, 2018 in the United States District Court for the Southern District of New York by Hawaii Iron Workers.  *See* ECF No. 1.  By order dated May 30, 2018, the Court appointed Operating Engineers as Lead Plaintiffs and Miller Shah LLP as Lead Counsel.  *See* ECF No. 88.  An amended complaint was filed on August 15, 2018, and a second amended complaint ("SAC" or "Complaint") was filed on November 26, 2018.  *See* Dkts. 96, 117.

The Complaint asserts claims under §§ 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act") and §§ 10(b) and (20)(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder (17 C.F.R. ¶ 240.10b-5).  *See* ECF No. 117.  The Complaint alleges that the Form S-3 registration statement for the SPO filed with the SEC, which incorporated a prospectus and prospectus supplements (the "Registration Statement"), and certain of AMC's other filings with the SEC during the Class Period included

---

[2] A [Proposed] Order and Final Judgment was filed as Exhibit B to the Declaration of Laurie Rubinow in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.  *See* ECF No. 214-6.

material misrepresentations and omissions regarding AMC's acquisition and integration of

Carmike Cinemas, Inc. ("Carmike"), Odeon and UCI Cinemas Holdings Ltd. ("Odeon"), and

Nordic Cinema Group Holding AB ("Nordic"), in violation of the sections of the Securities Act

and the Exchange Act referenced above.[3]

Defendants moved to dismiss the SAC on January 22, 2019, which Plaintiffs opposed on

February 25, 2019.  *See* Dkts. 124, 127, 131.  On September 23, 2019, this Court granted in part

and denied in part Defendants' motions, dismissing Plaintiffs' claims under the Securities Act

and the Exchange Act as to the alleged omission of information about Carmike's declining

market share and Plaintiffs' claims under the Exchange Act as to the alleged misrepresentation

and omission of information relating to the seasonality of the European market and Carmike's

loyalty program, as well as certain other statements identified in the Court's order, and otherwise

denying Defendants' motion.  *See* ECF No. 137.  Defendants then answered the SAC on

November 6, 2019, and the parties proceeded to discovery.  Dkts. 147, 148.

The Settling Parties engaged in significant discovery efforts in this Action, including,

*inter alia*, the exchange of document requests, interrogatories, and requests for admissions, and

the production of documents and electronically stored information in excess of one million

pages.  *See* Declaration of Laurie Rubinow in Support of Plaintiffs' Unopposed Motion for Final

Approval of Class Action Settlement ("Rubinow Decl."), ¶¶ 18, 29.  Plaintiffs conducted

depositions of 16 fact witnesses, including corporate representatives of AMC and Citi, senior

executives of AMC, including certain of the Individual Defendants, and current and former

AMC and Carmike employees with knowledge of the issues raised in the Action.  *Id.*, ¶¶ 21, 29.

---

[3]Additional background on the parties and claims is set forth in the Memorandum of Law in
Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.
*See* Dkt. 213.

Defendants conducted depositions of Plaintiffs and their investment advisors and the confidential witnesses cited in the SAC. *Id.* In addition, the Settling Parties served opening, rebuttal, and reply expert reports related to liability and damages issues. *Id.*, ¶ 29. The Settling Parties also conducted depositions of each of the seven disclosed experts. *Id.*, ¶¶ 21, 29. As a result, Plaintiffs and Class Counsel are well-informed about the Settling Parties' claims and defenses in this Action, as well as the risks and value associated with the same, and believe this Settlement to be fair, adequate, and reasonable and submit that it is in the best interest of the Class.

On March 30, 2021, this Court certified the Class over Defendants' opposition, certifying Plaintiffs as class representatives and appointing Lead Counsel as Class Counsel. *See* Dkts. 163, 198.

**B.     Settlement Discussions**

While litigating this Action, certain of the parties engaged in discussions regarding potential resolutions to provide relief to the Class. During the pendency of these negotiations, the parties communicated their positions regarding Plaintiffs' likelihood of success on their claims and the associated potential damages. As part of this process, Class Counsel conferred with experts to analyze the claims and damages at issue in this Action. Certain of the parties agreed to and held a two-day private mediation on November 18 and 19, 2020, with David Geronemus, Esq. of JAMS (the "Mediator"), and exchanged mediation statements regarding their respective positions. Although they did not reach agreement on a resolution of the Action during the mediation, the parties continued to discuss resolution with the Mediator as they proceeded with fact and expert discovery. Finally, after significant advancement of the Action and as the parties were preparing for summary judgment motions, they reached an agreement in principle on September 2, 2021 to settle the Action. As discussed in greater detail below, this

Court found the Settlement to be potentially fair, reasonable, and adequate in its Preliminary Approval Order. *See* ECF No. 215, Preliminary Approval Order.

### C.   The Settlement

#### 1.   Settlement Fund and Released Claims

The Stipulation provides that AMC, on behalf of all Defendants, shall cause its insurers to make payment in an aggregate amount of $18,000,000.00 into a "qualified settlement fund," within the meaning of Treasury Regulation § 1.468B-1, 26 C.F.R. § 1.468B-1, to be allocated to Authorized Claimants in accordance with the Plan of Allocation following deduction for Notice and Administration Costs, Taxes and any awarded attorneys' fees and Litigation Expenses. *See* ECF No. 214-1, Stipulation, ¶ 2, 18. In exchange, Plaintiffs and Class Members will dismiss their claims, as set forth more fully in the Stipulation. *See id.*, § IV. The Court approved the proposed Notice plan. *See* ECF No. 215, Preliminary Approval Order.

#### 2.   Distribution of Settlement Funds to Class Members

Following the Effective Date of the Settlement and the completion of claims administration, including resolution of any Class Member disputed, the Net Settlement Fund will be distributed only to those Class Members who purchased or otherwise acquired AMC common stock during the Class Period and were damaged as a result of such purchases, and who submit valid Proof of Claim and Release forms. The proposed Plan of Allocation provides for *pro rata* distribution to Authorized Claimants according to the quantity and timing of their purchase or acquisition of AMC common stock during the Class Period, including pursuant to the SPO. Each person or entity wishing to participate in the distribution must timely submit a valid Proof of Claim Form establishing membership in the Class. Those who fail to submit a valid and timely Proof of Claim will be forever barred from receiving payments pursuant to the Settlement.

*See* ECF No. 214-3, Stipulation, Ex. A-1 ¶¶ 34, 48.  Pursuant to the terms of the Stipulation and

Preliminary Approval Order, the Notice and Proof of Claim forms have been mailed to Class

Members,[4] and the Summary Notice was published on *PR Newswire* and *Investor's Business*

*Daily*.  *See* Bravata Decl., ¶ 10.  A class settlement website containing information and a toll-free

number for Class Member inquiries has also been set up.  *See id.*, ¶¶ 11-12.

    **D.**    **Preliminary Approval**

By order dated November 2, 2021 and entered November 8, 2021, the Court preliminarily

approved the proposed settlement ("Settlement").  *See* ECF No. 215, Preliminary Approval

Order.  In so doing, the Court found that the Settlement resulted from informed, extensive arm's-

length and non-collusive negotiations between the Settling Parties, and falls within a range of

reasonableness that would warrant eventual final approval and is therefore sufficiently fair,

reasonable, and adequate to warrant providing notice of the Settlement to the Class.  The reaction

of Class Members to the Settlement following notice further supports final approval of the

Settlement.  The Claims Administrator has provided direct notice to over 25,000 Class Members

and arranged for publication notice, and to date there have been no objections to the Settlement

to date, and no Class Members have requested to opt out of the Class.  *See* Bravata Decl., ¶¶ 13-

14.[5]

---

[4]As set forth in greater detail in the accompanying Bravata Declaration, consistent with best
practices, the Claims Administrator notified a master list of third-party nominees and
institutional groups, which hold securities on behalf of beneficial purchasers, of the Settlement,
and mailed the Notice and Claim Form to individuals and organizations identified in the transfer
records that were provided by Defendants, and provided the Notice and Claim form to
individuals and nominees who requested the same.  *See* Declaration of Josephine Bravata
Concerning:  (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary
Notice; and (C) Report on Requests for Exclusion and Objections ("Bravata Declaration"), ¶¶ 2-
9.
[5]Should any objections be received prior to the January 20, 2022 deadline, Class Counsel will
address them in a supplemental memorandum.

### III.    THE SETTLEMENT WARRANTS FINAL APPROVAL

"A court may approve a class action settlement if it is 'fair, adequate, and reasonable, and not a product of collusion.'"  *Wal-Mart Stores, Inc. v. Visa U.S.A.*, 396 F.3d 96, 116 (2d Cir. 2005); *see also* FED. R. CIV. P. 23(e) (setting forth two-step process and standard for approval of class action settlements).  Courts consider "both the settlement's terms and the negotiating process leading to the settlement."  *Id.*; *see also In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.* ("*In re Payment Card Fee Litig. II*"), 330 F.R.D. 11, 28 (E.D.N.Y. 2019) (explaining that a settlement is fair, reasonable, and adequate and warrants court approval if it is shown to be both procedurally and substantively fair).  The Second Circuit has repeatedly recognized the "strong judicial policy in favor of settlements, particularly in the class action context."  *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018) (citing *Wal-Mart Stores, Inc.*, 396 F.3d at 116) ("[t]he compromise of complex litigation is encouraged by the courts and favored by public policy."); *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class action.").  Moreover, the U.S. Supreme Court has cautioned that in evaluating a proposed class-action settlement, courts should "not decide the merits of the case or resolve unsettled legal questions.  *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). This is particularly important in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. *See* William Rubenstein, Alba Conte, & Herbert B. Newberg, 4 Newberg on Class Actions § 13.44 (5th ed. 2014).

The Court has already granted preliminary approval of the Settlement, ordered the issuance of Notice to the Class, and set the Final Approval Hearing.  In light of the positive reception of the Class, and because the Settlement and Class satisfy the other relevant factors, the Court should grant final approval.

A.    **The Settlement is Procedurally Fair**

In assessing whether a settlement merits approval, where "the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement, and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re Paine Webber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *see also Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003) ("A strong presumption of fairness attaches to proposed settlements that have been negotiated at arms-length.").

The Settlement was reached through a comprehensive arm's-length negotiation process, including a two-day formal mediation, following which the Settling Parties did not reach agreement, and follow-up discussions through the Mediator while active litigation continued. *See* Rubinow Decl., ¶¶ 20, 28-29.  The nature of the Settling Parties' negotiations and the involvement of an experienced mediator supports the conclusion that the Settlement is fair and free of collusion.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

In negotiating the Settlement, Plaintiffs had the benefit of attorneys who are highly experienced in complex litigation and well-versed in the legal and factual issues involved in this Action.  *See* Rubinow Decl., Ex. C; Rosenfeld Decl., Ex. E; *see also Lyons v. Marrud, Inc.*, 1972

WL 327, *2 (S.D.N.Y. June 6, 1972), ("[E]xperienced and competent counsel have assessed these problems and the probability of success on the merits. They have concluded that compromise is well-advised and necessary.  The parties' decision regarding the respective merits of their positions has an important bearing on this case."); *see also In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *12 (S.D.N.Y. Nov.7, 2007) (courts should "consider the opinion of experienced counsel with respect to the value of the settlement"); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. at 125 ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").

Moreover, the Settlement does not provide preferential treatment to Plaintiffs or any other members of the Class.  As discussed in greater detail below, the Plan of Allocation developed by Class Counsel in consultation with Plaintiffs' damages expert provides a fair and reasonable method to allocate the Net Settlement Fund among Class members who submit valid Claim Forms.  *See* Rubinow Decl., ¶¶ 38-40; *see also infra* Section V.

The procedural fairness inquiry embraces Rule 23(e)(2)(A)'s adequacy of representation requirement.  *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019). The adequacy determination includes inquiries into both the plaintiff and his or her counsel.  *See id*; *see also In re Payment Card Fee Litig. II*, 827 F.3d 223, 232 (2d Cir. 2016).  Here, Plaintiffs and Class Counsel clearly also satisfy the requirements of Rule 23(e)(2)(A).  Plaintiffs' interests are neatly aligned with all other members of the Class because they all purchased or acquired shares of AMC common stock in the SPO and/or during the Class Period and suffered injuries of the same kind as a result of the alleged material misrepresentations and omissions.  In addition, Class Counsel are "qualified, experienced, and able" to conduct the litigation, as demonstrated by their successful prosecution of numerous complex securities actions and the outstanding result

achieved here after significant motion practice, fact and expert discovery, and the class

certification process.  *See id*.  Further, as demonstrated by the repeated rounds of briefing on

Defendants' motions to dismiss and Plaintiffs' class certification motion, and the meaningful

settlement negotiations, there has been no collusion or complicity of any kind in connection with

the Settlement or related negotiations.

In sum, the negotiation of the Settlement was procedurally fair, such that a presumption

of fairness attaches to the Settlement.  *See Thompson*, 216 F.R.D. at 61.

**B.**      **The Settlement is Substantively Fair**

Rule 23 sets forth factors to guide the Court's analysis of both the procedural and

substantive fairness of a settlement.  *See* FED. R. CIV. P. 23 advisory committee's note to 2018

amendment (stating Rule 23 now focuses on the "core concerns of procedure and substance" to

be considered when deciding whether to finally approve a settlement).  Courts in this Circuit also

consider the factors set forth in *Grinnell* to evaluate the substantive fairness of a class

settlement.[6]  All nine factors need not be satisfied; rather, the Court should consider the totality

of these factors in light of the particular circumstances.  *See Thompson*, 216 F.R.D. at 61.

Application of Rule 23 and the *Grinnell* factors here shows that, on balance, final approval of the

Settlement is warranted.

---

[6] The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation, (2)
the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of
discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages,
(6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to
withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of
the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible
recovery in light of all the attendant risks of litigation.  *See Grinnell*, 495 F.2d at 463.

1.    **The Expense, Complexity and Likely Duration of Further Litigation Weigh in Favor of Final Approval**

The first factor requires the Court to consider the complexity, expense, and likely duration of litigation. *See Wal-Mart*, 396 F.3d at 117. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them" and courts therefore favor class action settlements. *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). In addition, significant time spent on a case may also be an indicator that the first factor is met. *See In re PaineWebber Ltd. P'ships*, 171 F.R.D. at 126.

The Settlement provides the Class with substantial and certain relief, without the delay and expense of additional motion practice, trial, and post-trial proceedings. Due to the inherent complexity of securities litigation and the stringent requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), as well as intervening case law developments, prosecution of securities class action litigation is inherently complex and lengthy. As set forth herein and in Plaintiffs' memorandum in support of their motion for preliminary approval, any trial would be complex given the legal issues relevant to Plaintiffs' allegations. *See* ECF No. 213, at 13-15. Moreover, even if Plaintiffs were to prevail, it could be years before any recovery would be received in light of the likelihood of appeals, on top of the well over three years the Settling Parties have already spent litigating this Action.

2.    **The Favorable Reaction of the Class Supports Final Approval**

The reaction of a class to a proposed settlement is a significant factor in the final approval analysis and supports final approval here. *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014). Courts find the absence of objections and requests for exclusion to be an indication of the adequacy of a settlement. *See id.*; *Wal-Mart Stores*, 396 F.3d

at 118 (same); *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006)

(finding that the "small number of objectors . . . strongly favor the Settlement"). To date, no

potential members of the Class have objected to the Settlement or sought to be excluded from the

Class. *See* Bravata Decl., ¶¶ 13-14. The Summary Notice was published on November 22,

2021, and over 25,000 potential Class members and nominees have received individual notice of

the Settlement. *See id.*, ¶¶ 7, 10. The Notice contains a description of the Action, the

Settlement, and information about Class Members' right to participate in the Settlement by

submitting a Claim Form, to object to the Settlement, the Plan of Allocation, and/or the

application for attorneys' fees, expenses, and awards to Plaintiffs, or to request exclusion from

the Class. *See* ECF No. 214-3, Stipulation, Ex. A-1, Notice of Pendency of Class Action and

Proposed Settlement. The overwhelmingly favorable reaction of the Class supports the

Settlement. *See Bear Stearns*, 909 F. Supp. 2d at 267 ("Given the absence of significant

exclusion or objection—the rate of exclusion is 5.1% and the rate of objection is less than 1%—

this factor weighs strongly in favor of approval.").

### 3.     The Advanced Stage of the Proceedings Supports Final Approval

This factor relates to whether the plaintiffs had sufficient information on the merits

of the case to enter into a settlement." *Parker v. Time Warner Entm't Co.*, 631 F. Supp. 2d 242,

259 (E.D.N.Y. 2009), *aff'd sub nom. Lobur v. Parker*, 378 F. App'x 63 (2d Cir. 2010).

Extensive discovery ensures the parties had access to sufficient material to evaluate their cases

and to assess the settlement given strengths and weaknesses. *See id.* Here, the proceedings were

sufficiently advanced to provide Plaintiffs with a thorough understanding of the strengths and

weaknesses of the Class' claims.

Discovery was completed before the Settling Parties reached agreement on the terms of the Settlement.  As already explained, this included the review and analysis of over one million pages of documents, depositions of over 20 fact and expert witnesses, and significant additional consultation and analysis by experts.  *See* Rubinow Decl., ¶¶ 21, 29.  The advanced stage of this litigation afforded the Settling Parties and their counsel the ability to realistically evaluate the merits of the Settling Parties' claims and defenses and risk to all sides.

### 4. There are Substantial Risks of Establishing Liability and Damages, and Maintaining Class Certification Through Trial

In assessing the fairness, reasonableness, and adequacy of a settlement, courts should consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell*, 495 F.2d at 463; *Wal-Mart*, 396 F.3d at 117.  Analyzing these risks "does not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. Nov. 24, 2004); *AOL Time Warner*, 2006 WL 903236 at *11 (same).  This further overlaps with the adequacy inquiry required by Rule 23(e)(2). *See In re Payment Card Fee and Merchant Discount Antitrust Litig.* ("*In re Payment Card Fee Litig. I*"), 330 F.R.D. 11, 36 (E.D.N.Y. 2019).

"[I]n evaluating the settlement of a *securities* class action, federal courts, including this Court, have long recognized that such litigation is notably difficult and notoriously uncertain." *In re Marsh & McLennan Cos. Inc., Sec. Litig.*, No. 04 Civ. 8144(CM), 2009 WL 5178546, at *5 (S.D.N.Y. Dec. 23, 2009) (quoting *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999)) (emphasis in original).  When evaluating this factor, the Court must balance the "benefits afforded the class, including immediacy and certainty of recovery, against the continuing risks of litigation," *In re GSE Bonds*, 414 F. Supp. 3d at 693.  At final approval, it is not the court's role

14

to decide on the merits of the case or to "foresee with absolute certainty the outcome of the case." *See Shapiro v. JP Morgan Chase & Co.*, No. 11 Civ. 8331(CM)(MHD), 2014 WL 1224666, at *10 (S.D.N.Y. Mar. 24, 2014).

New precedents are frequently issued, and the demands on counsel and courts are complex, requiring the devotion of significant resources. The prosecution of this Action and the risks that Plaintiffs face in establishing liability and damages, as well as maintaining class certification through trial, overwhelmingly support approval of the Settlement. Indeed, absent settlement, the Settling Parties would begin briefing complex summary judgment and *Daubert* motions, any trial would be complex given the legal issues relevant to Plaintiffs' allegations, and, even if Plaintiffs prevailed, it could be years before any recovery would be received considering possible appeals. Because of "the lengthy, costly, and uncertain course of further litigation, the settlement provides a significant and expeditious route to recovery for the Class," and "it may be preferable 'to take the bird in the hand instead of the prospective flock in the bush,'" *In re Prudential*, 163 F.R.D. at 210 (quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974)). Moreover, because continued litigation increases litigation expenses, it could ultimately result in a smaller recovery to the Class, even ignoring the time value of money.

Plaintiffs' pursuit of recovery of the losses resulting from the course of conduct alleged in this Action began in January 2018, roughly four years ago. Since then, the Settling Parties have acquired extensive knowledge and information about the claims and defenses relevant to the Action, sufficient to evaluate the "the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement." *See Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002); *see also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004). The thorough

investigation undertaken by Class Counsel and additional counsel here, coupled with the significant discovery conducted in this Action, has afforded Class Counsel a significant understanding of the merits of the claims asserted, the strength of Defendants' defenses, and the values of theoretical outcomes of the case, which is reflected by, *inter alia*, the rounds of briefing on Defendants' motion to dismiss and Plaintiffs' class certification motion and the Settling Parties' meaningful settlement negotiations.  In addition, Class Counsel relied on expert analysis in assessing the claims, defenses, and potential damages, which supports a finding that Plaintiffs had adequate information in connection with their negotiations and evidentiary support for the Settlement.  *See In re GSE Bonds*, 414 F. Supp. 3d at 699; *Plummer v. Chem. Bank*, 668 F.2d 654, 659 (2d Cir. 1982).

The record in these proceedings and the law -- as reflected by the Court's dismissal of several of Plaintiffs' claims -- confirm the risks of establishing liability and damages.  In order to succeed on the merits, Plaintiffs not only would need to establish that statements were materially misleading or omitted material information and caused Plaintiffs' losses and that Defendants acted with *scienter* with respect to the Exchange Act claims, but also overcome Defendants' affirmative defenses.  Moreover, absent the Settlement, Defendants stated their intent to move for summary judgment and undoubtedly would mount vigorous defenses to liability and damages at the trial phase if their motions for summary judgment were unsuccessful.  Such defenses would likely include, *inter alia*, arguments based upon the disclosure of the alleged omissions in the Registration Statement and other public filings and statements, Defendants' performance of reasonable due diligence in connection with the Registration Statement, that they did not act with *scienter* with respect to the Exchange Act claims, and that they did not cause any of Plaintiffs' alleged losses.  The summary judgment and trial stages would involve extensive briefing and

motion practice and significant competing expert testimony, all of which pose risks to Plaintiffs' ability to establish liability.  Moreover, even if Plaintiffs established liability at trial, there is a substantial risk that a jury could accept Defendants' damages arguments and award far less than the funds secured by the Settlement, or nothing at all.  Accordingly, the risks of establishing Defendants' liability favors the Court's approval of the settlement.

Plaintiffs also face a risk -- albeit remote -- that the Court would modify the Class later in the proceedings, including at trial.  *See, e.g.*, *IBEW Local 90 Pension Fund v. Deutsche Bank AG*, 2013 WL 5815472 (S.D.N.Y. Oct. 29, 2013) (denying motion for class certification).  The Settlement acknowledges the risk inherent in maintaining the Class through trial and judgment.

### 5. The Ability of Defendants to Withstand a Greater Judgment is of Little Consequence to Final Approval

While there is no evidence that Defendants could not withstand a greater judgment, courts have regularly held that "against the weight of the remaining factors, this fact alone does not undermine the reasonableness of [a settlement]."  *In re GSE Bonds*, 414 F. Supp. 3d at 696; *see also In re AOL Time Warner*, 2006 WL 903236 at *12 (finding that "the mere ability to withstand a greater judgment does not suggest that the Settlement is unfair[.]"); *see also In re LIBOR-Based Financial Instruments Antitrust Litig.*, 327 F.R.D. 483, 494 (S.D.N.Y. 2018) (stating that the defendants' ability to pay more than was offered in settlement does not indicate inadequacy or unreasonableness).  Rather, this factor must be weighed in conjunction with all of the *Grinnell* factors, most notably the risk of the class prevailing and the reasonableness of the settlement fund.  As Plaintiffs explained in their memorandum in support of preliminary approval, the uncertainty of the current business environment and continuing impact of the COVID-19 pandemic on AMC's business bears on this factor.  Considering all of the foregoing, the Settlement clearly represents a strong compromise between the Settling Parties.

**6.    The Settlement is Within the Range of Reasonableness in Light of the Best Possible Recovery and all Attendant Risks of Litigation**

Courts often examine together the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation.  *See In re Payment Card Fee Litig. I*, 330 F.R.D. at 47-48.  "In considering these facts, the settlement amount's ratio to the maximum potential recovery need not be the sole, or even the dominant, consideration when assessing the settlement's fairness."  *See In re LIBOR*, 327 F.R.D. at 495.  In fact, courts in this Circuit have approved of settlements where the plaintiffs did not offer a damages estimate. *See In re GSE Bonds*, 414 F. Supp. 3d at 696; *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *20 (S.D.N.Y. Nov. 8, 2010) ("[T]he issue for the Court is not whether the Settlement represents the 'best possible recovery', but how the Settlement relates to the strengths and weaknesses of the case.").  Furthermore, "in any case, there is a range of reasonableness with respect to a settlement."  *Id.*  (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  This range of reasonableness "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman*, 464 F.2d at 693.

Based on a commonly accepted methodology (*i.e.*, an event study), Plaintiffs' expert opined that the information allegedly misstated and omitted was economically material and that the decline in AMC stock following the disclosure of this information represents the actual loss per share suffered by investors and provides a measure of the artificial inflation present in the price of the stock throughout the Class Period.  Plaintiffs' expert further opined that the market price of AMC stock was artificially inflated by $1.11 per share throughout the Class Period and, thus, Plaintiffs' expert calculated investors who purchased AMC stock when the price was artificially inflated and held it beyond the corrective disclosure event suffered actual economic

losses of $1.11 per share.  *See* Rubinow Decl., ¶ 29.  The damages calculation here would be subject to the factfinder's determinations with respect to several significant variables.  For instance, the factfinder must determine the correct measure by which AMC's stock was artificially inflated, as there are a number of factors that determine stock price.  Defendants would argue that the decline in stock price was attributable to other factors, not the corrective disclosure and, thus, that Plaintiffs and the class suffered no damages.  And, of course, all of these figures presuppose a finding of liability.

Regardless, at $18,000,000, the Settlement recovery is quite significant, as it would represent a greater than 40% recovery rate at the low end of Plaintiffs' damages calculations and greater than 10% of the high end (which does not account for any negative causation offset), each inclusive of interest.  This recovery rate range sits comfortably within -- indeed, at the very high end of -- those accepted by other courts in this Circuit.  *See, e.g.*, *In re GSE Bonds*, 414 F. Supp. 3d at 697 (13-17%); *In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, 2006 WL 3247396, at *6 (S.D.N.Y. Nov. 8, 2006) (10-15%); *In re Interpublic Sec. Litig.*, No. 02 CIV.6527(DLC), 2004 WL 2397190, at *8 (S.D.N.Y. Oct. 26, 2004) (10-20%); *In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, No. 3:09CV1293 VLB, 2012 WL 3589610, at *7 (D. Conn. Aug. 20, 2012) (3.5%). *See also Wilson v. DirectBuy, Inc.*, No. 3:09-CV-590JCH, 2011 WL 2050537, at *13 (D. Conn. May 16, 2011) ("the Second Circuit has long held that even settlements which represent a fraction of the best possible result may be appropriate in light of the risks associated with bringing such claims.") (citing *Grinnell*, 495 F.2d at 455 n.2); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 428 (S.D.N.Y. 2001) ("there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.") (citing *Grinnell*, 495 F.2d at 455 n.2).

### 7.     The Remaining Rule 23(e)(3) Factors are Satisfied

In addition, Class Counsel's application for attorneys' fees, expenses, and awards to

Plaintiffs is reasonable.  As stated in the Notice and in the accompanying Motion for Attorneys'

Fees, Expenses, and Awards to Plaintiffs, Plaintiffs request that the Court award 33 1/3% of the

Settlement Fund to Class Counsel as attorneys' fees.  Plaintiff requests the payment of expenses

in the amount of $1,290,333.96 for reasonable and necessary expenses incurred in connection

with the prosecution and resolution of this Action, as well as an award of $4,625 to Lead

Plaintiff and $21,217.79 to Additional Plaintiff pursuant to 15 U.S.C. §77z-1(a)(4) and 15 U.S.C.

§78u-4(a)(4).  This request is consistent with this Court's common practice, as courts in this

district routinely approve similar fees in complex class cases, excluding expenses.  *See In re GSE*

*Bonds*, 414 F. Supp. 3d at 695.  In addition, pursuant to Rule 23(e)(3), the Stipulation describes a

Supplemental Agreement executed by Class Counsel and counsel for the AMC Defendants that

provides the AMC Defendants with an option to terminate the Settlement (which would

terminate the Settlement as to all Defendants) in the event that Class Members who collectively

hold shares of AMC stock equal to or in excess of the Opt-Out Threshold timely and validly

request exclusion from the Class in accordance with the terms of the Stipulation.  *See* ECF No.

214-1, Stipulation, ¶ 39; *see also Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-cv-1152-

M, 2018 WL 1942227, at *5 (N.D. Tex. Apr. 25, 2018) (approving settlement where stipulation

described a "supplemental confidential agreement" between the parties that gave defendant the

right to terminate the settlement if valid opt-outs exceeded a specified threshold).  Class Counsel

are aware of no other agreements required to be disclosed under Rule 23(e)(3).

## IV. <u>THE CLASS NOTICE PLAN INFORMED THE CLASS OF THE SETTLEMENT AND SATISFIED DUE PROCESS</u>

Rule 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [settlement]." *See* FED. R. CIV. P. 23(e)(1)(B). Notice must be the "best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *see also Wal-Mart*, 396 F.3d at 114 ("There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings'").

Here, both the substance of the Notice and the means of dissemination satisfied these standards. The Court-approved Notice includes all the information required by Rule 23(c)(2)(B) and the PSLRA, 15 U.S.C. §§ 77z-1(a)(7), 78u-4(a)(7), including the following: (i) an explanation of the Action and the claims asserted; (ii) the definition of the Class; (iii) the amount of the Settlement; (iv) a description of the Plan of Allocation; (v) the Parties' reasons for proposing the Settlement; (vi) the fees and expenses to be sought by Counsel, administrative costs, and awards to Plaintiffs; (vii) the rights of Settlement Class Members, including the right to accept, opt out, or object to the Settlement, Plan of Allocation, or the requested attorneys' fees or expenses; (viii) the process for filing a proof of claim; (ix) the necessary information for any Settlement Class Member to examine the Court records should they desire to do so; (x) instructions to securities brokers and other nominee holders for forwarding the Notice to those persons for whom the nominees held shares in street name; (xi) the binding effect of a judgment on Class Members; and (xii) the date and time of the Final Approval Hearing.

Dissemination of the Notice was carried out by Strategic Claims Services ("SCS"), a third-party claims administrator nationally recognized for notice and claims administration and included multiple components designed to reach the largest number of Class Members possible. *See* Bravata Decl., ¶¶ 2-8.  First, SCS sent 2,227 nominee holders on its master mailing list a letter notifying them of the Settlement and requesting that they either forward the Notice and Claim Form (or email a link to the online versions of the same) to their customers who may be beneficial purchasers or owners of AMC common stock, or provide SCS with a list of the names and mailing addresses of such beneficial purchasers or owners.  *See id.*, ¶ 3.  Second, SCS mailed the Notice and Claim Form to individuals and organizations identified in the transfer records provided to it by Defendants.  *See id.*, ¶ 4.  Third, SCS mailed the Notice and Claim Form to potential Class Members identified by nominees and others who requested the Notice and Claim Form.  *See id.*, ¶ 5.  To date, SCS has mailed over 20,000 Notices and Claim Forms, and understands that one nominee notified an additional 4,452 of its customers about the Settlement and provided direct links to the Notice and Claim Form on the settlement website.  *See id.*, ¶ 6. Accordingly, over 25,000 Class Members and nominees were either notified by mailed Notice and Claim Form or emailed a direct link to the Notice and Claim Form.  *See id.*, ¶ 7.

The Notice and Claim Form, along with other documents related to the litigation, remain available on the settlement website.  Further, the Claims Administrator has caused the Summary Notice to be published on *PR Newswire* and in the *Investor's Business Daily* and has also maintained and monitored a toll-free telephone number for the purpose of fielding any inquiries related to the Settlement by member of the Class.  *See* Bravata Decl. ¶¶ 9-10.  This combination of individual first-class mail to all Settlement Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate, widely circulated publication,

transmitted over the newswire, and posted on the internet, was "the best notice … practicable under the circumstances."  Rule 23(c)(2)(B); *see In re Advanced Battery Techs. Secs. Litig.*, 298 F.R.D. 171, 182 (S.D.N.Y. 2014).

In addition, Administration of the Settlement here will effectively "deter or defeat unjustified claims," without being "unduly demanding."  *In re GSE Bonds*, 414 F. Supp. 3d at 694 (citing FED R. CIV. P. 23, Adv. Comm. Note, 2018 amend., sub. (e)(2)(c)).  Additionally, "while the plan of allocation must be fair and adequate, it need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."  *Id*.  (internal quotations marks omitted).  As discussed in greater detail below, the Plan of Allocation is designed to provide *pro rata* recovery to Authorized Claimants according to the quantity and timing of their purchase or acquisition of AMC common stock during the Class Period, including pursuant to the SPO.  The Plan of Allocation represents a reasonable method of ensuring "the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund." *Id*. at 695.

This Court should find that the Class Notice plan as implemented to be reasonable and that it satisfied due process.

## V.       THE PLAN OF ALLOCATION SHOULD BE APPROVED

A plan of allocation must be fair and adequate to warrant approval.  *See In re Facebook, Inc.*, 343 F. Supp. 3d at 414.  "The formula established for allocation need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."  *Id*.; *see also Guevoura Fund Ltd. v. Silverman*, 2019 WL 6889901, at *10 (S.D.N.Y. Dec. 18, 2019) ("Courts have recognized that the adequacy of an allocation plan turns on

whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information.")

Here, Plaintiffs' Plan of Allocation was prepared by both an experienced counsel and a damages expert, which the court in *In re Facebook* found to be an indication of reasonableness. *See In re Facebook, Inc.*, 343 F. Supp. 3d at 414. The Plan of Allocation is reasonable in that it provides for *pro rata* distribution of the Net Settlement Fund among Authorized Claimants according to the amount and timing of each such Class Member's purchase or acquisition of AMC common stock during the Class Period, including pursuant to the SPO. *See* Stipulation, Ex. A-1 ¶ 32. This Court regularly approves plans of allocation that provide recovery to class members on a *pro rata* basis, as is here. *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010); *see also In re AOL Time Warner*, 2006 WL 903236 at *17 (where the plan of allocation provided recovery to damaged investors on a *pro rata* basis based on their recognized claims of damages.)

On the other hand, the Plan of Allocation here provides an additional recognized loss for shares with a claim under both the Securities Act and the Exchange Act, which reflects Class Counsel's determination that, although the damages alleged to be actionable under each statute generally relate to similar alleged misconduct and the same stock price declines, the Securities Act claims add value to the overlapping Exchange Act claims because they do not require certain showings that the Exchange Act claims require, including *scienter*, making such claims more likely to prevail if ultimately litigated to a conclusion.

Overall, the Plan of Allocation is substantially similar to ones that have been approved and utilized in similar securities actions. *See, e.g., In re Facebook, Inc.*, 343 F. Supp. 3d at 414-15; *In re Global Crossing*, 225 F.R.D. at 462. Counsel submits that the Plan of Allocation fairly

and rationally allocates the proceeds of the Net Settlement Fund among Authorized Claimants based on the losses they suffered on transactions in AMC common stock attributable to the conduct alleged.  Moreover, the Plan of Allocation is set forth in the Notice, and to date no objections to the Plan have been received from any Settlement Class Members.  *See* Bravata Decl., ¶¶ 13-14.

For all of the reasons set forth herein, the Plan of Allocation is fair and reasonable and should be granted final approval for the purpose of administering the Settlement.

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Class Action Settlement with Defendants and approve the Plan of Allocation.

Dated: January 6, 2022                                   Respectfully submitted,

MILLER SHAH LLP

<u>/s/ Laurie Rubinow</u>
James E. Miller
Laurie Rubinow
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (866) 300-7367
Email: jemiller@millershah.com
       lrubinow@millershah.com

James C. Shah
Jayne A. Goldstein
Eric L. Young
Bruce D. Parke
Alec J. Berin
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (610) 891-9880
Facsimile: (866) 300-7367
Email: jcshah@millershah.com
       jagoldstein@millershah.com
       elyoung@millershah.com

bdparke@millershah.com
ajberin@millershah.com

*Attorneys for Lead Plaintiff, the
International Union of Operating
Engineers Pension Fund of Eastern
Pennsylvania and Delaware, and
the Class*

ROBBINS GELLER RUDMAN &
DOWD LLP

Samuel H. Rudman
David A. Rosenfeld
Christopher T. Gilroy
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: (631) 367-7100
Facsimile: (631) 367-1173
Email: srudman@rgrdlaw.com
        drosenfeld@rgrdlaw.com
        cgilroy@rgrdlaw.com

*Attorneys for Plaintiff, Hawaii Iron
Workers Pension Trust Fund, and
the Class*