## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| HAWAII STRUCTURAL IRONWORKERS PENSION TRUST FUND, Individually and on Behalf of All Others Similarly Situated, | : : : : | No. 1:18-cv-00299-AJN-SLC<br><br>Final Approval Hearing:<br>February 10, 2022 at 3:00 PM |
| Plaintiff, | : : | |
| v. | : : | |
| AMC ENTERTAINMENT HOLDINGS, INC., *et al.*, | : : : | |
| Defendants. | : : | January 6, 2022 |

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, EXPENSES, AND AWARDS TO PLAINTIFFS

---

# TABLE OF CONTENTS

Table of Authorities ........................................................................................................... ii

I.      INTRODUCTION ............................................................................................. 1

II.     BACKGROUND ............................................................................................... 3

III.    ARGUMENT ...................................................................................................... 4

       A.     Counsel Are Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund ....................................................................... 4

       B.     The Court Should Award a Reasonable Percentage of the Common Fund ........... 5

       C.     The Relevant Factors Confirm that the Requested Fee is Reasonable ................. 6

              1.     The Time and Labor Expended by Counsel ................................................ 8

              2.     The Magnitude, Complexity, and Risk of Litigation ................................. 9

              3.     The Settling Parties Were Represented by Experienced, High-Caliber Counsel Who Approved the Settlement ..................................................... 12

              4.     The Requested Fee in Fair and Reasonable in Relation to the Settlement 13

              5.     The Requested Fees are Reasonable Under Either the Percentage-of-the-Fund Method or the Lodestar Method ....................................................... 13

              6.     Private Securities Litigation is an "Essential Supplement" to Criminal Prosecution and Civil Enforcement .......................................................... 15

       D.     The Requested Litigation Expenses are Reasonable ........................................... 16

       E.     The Awards to Plaintiffs are Reasonable ............................................................ 16

IV.    CONCLUSION .................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*,
  568 U.S. 455 (2013) ............................................................................................................... 2

*Aponte v. Comprehensive Health Mgmt., Inc.*,
  2013 WL 1364147 (S.D.N.Y. Apr. 2, 2013) ........................................................................... 8

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. Of Albany & Albany Cty. Bd. Of
  Elections*,
  522 F.3d 182 (2d Cir. 2008) .................................................................................................... 6

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
  2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ......................................................................... 11

*Blum v. Stenson*,
  465 U.S. 886 (1984) .......................................................................................................... 7, 14

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ................................................................................................................ 4

*City of Providence v. Aeropostale, Inc.*,
  2014 WL 1883494 (S.D.N.Y. May 9, 2014) ................................................................. passim

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) .................................................................................................. 11

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000) ........................................................................................... passim

*Grice v. Pepsi Beverages Co.*,
  363 F. Supp. 3d 401 (S.D.N.Y. 2019) ..................................................................................... 7

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) .............................................................................................................. 14

*In re Alloy, Inc. Sec. Litig.*,
  2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) ......................................................................... 11

*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ................................................................................... 10

*In re AOL Time Warner, Inc. Sec. and ERISA Litig.*,
2006 WL 3057232 (S.D.N.Y. Oct. 25, 2006) ........................................................... 9

*In re AOL Time Warner, Inc.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............................................................ 11

*In re Arakis Energy Corp. Sec. Litig.*,
2001 WL 1590512 n.12 (E.D.N.Y. Oct. 31, 2001) .................................................. 16

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) ................................................................... 16

*In re Citigroup Inc. Bond Litig.*,
988 F. Supp. 2d 371 (S.D.N.Y. 2013) ................................................................... 11

*In re Colgate-Palmolive Co. ERISA Litig.*,
36 F. Supp. 3d 344 (S.D.N.Y. 2014) ............................................................... 13, 15

*In re Cont'l Illinois Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) .............................................................................. 14

*In re Credit Default Swaps Antitrust Litig.*,
2016 WL 2731524 (S.D.N.Y. 2016) ...................................................................... 14

*In re Currency Conversion Fee Antitrust Litig.*,
263 F.R.D. 110 (S.D.N.Y. 2009) ............................................................................ 9

*In re Deutsche Bank AG Sec. Litig.*,
2020 WL 3162980 (S.D.N.Y. June 11, 2020) ........................................................ 13

*In re Elan Sec. Litig.*,
385 F. Supp. 2d 363 (S.D.N.Y. 2005) ................................................................... 15

*In re Facebook, Inc. IPO Sec. & Deriv. Litig. (*"Facebook I"*),*
2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) ...................................................... 2, 13

*In re Facebook, Inc. Sec. & Deriv. Litig.* ("Facebook II"),
343 F. Supp. 3d 394 (S.D.N.Y. 2018) ............................................................. 16, 18

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
2018 WL 5839691 (S.D.N.Y. Nov. 8, 2018) ....................................................... 7, 14

*In re GSE Bonds Antitrust Litig.*,
2020 WL 3250593 (S.D.N.Y.June 16, 2020) .......................................................... 14

*In re Giant Interactive Group, Inc. Securities Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) .......................................................................... 11

*In re Independent Energy Holdings PLC Sec. Litig.*,
   302 F. Supp. 2d 180 (S.D.N.Y. 2003) ...................................................................... 16

*In re Interpublic Sec. Litig.*,
   2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ............................................................. 5

*In re Lloyd's Am. Trust Fund Litig.*,
   2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ........................................................ 15

*In re Marsh & McLennan Cos. Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ..................................................... 10, 17

*In re Merrill Lynch Tyco Research Sec. Litig.*,
   249 F.R.D. 124 (S.D.N.Y. 2008) .............................................................................. 12

*In re Metlife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ...................................................................... 17

*In re Milken & Associates Sec. Litig.*,
   150 F.R.D. 46 (S.D.N.Y. 1993) ................................................................................ 10

*In re Nortel Networks Corp. Sec. Litig.*,
   539 F.3d 129 (2d Cir. 2008) ........................................................................................ 6

*In re Paine Webber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) .............................................................................. 10

*In re Platinum and Palladium Commodities Litig.*,
   2014 WL 3500655 (S.D.N.Y. July 15, 2014) ............................................................. 9

*In re Signet Jewelers Ltd. Sec. Litig.*,
   2020 WL 4196468 (S.D.N.Y. July 21, 2020) ................................................... 6, 16, 17

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985) ..................................................................... 11, 12

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) ...................................................................... 15

*Maley v. Del Global Technologies Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................. 11, 14

*Meredith Corp. v. SESAC, L.L.C.*,
   87 F. Supp. 3d 650 (S.D.N.Y. 2015) ........................................................................ 12

*Oklahoma Firefighters Pension and Ret. Sys. v. Lexmark Int'l, Inc.*,
   2021 WL 76328 (S.D.NY. Jan. 7, 2021) .................................................................... 5

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ...................................................................................... 16

*Shapiro v. JPMorgan Chase & Co.*,
  2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ........................................................... 10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005)........................................................................................... 15

**Statutes**

15 U.S.C. §77z-1(a)(4).................................................................................................. 1, 2

15 U.S.C. §78u-4(a)(4) ............................................................................................ 1, 2, 16

15 U.S.C. §78u-4(a)(6) ..................................................................................................... 5

Rules

Federal Rule of Civil Procedure 23 ................................................................................ 1

**Other Authorities**

7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure
  §1803, at 325 (3d ed. 2005) ........................................................................................... 4

Manual for Complex Litigation (Fourth) §14.121 (2004) ............................................... 5

## I.   <u>INTRODUCTION</u>

Pursuant to Federal Rule of Civil Procedure 23 and pursuant to the Court's Order Granting Preliminary Approval of Class Action Settlement dated November 2, 2021 and entered on November 8, 2021("Preliminary Approval Order"), Lead Plaintiff, the International Union of Operating Engineers Pension Fund of Eastern Pennsylvania and Delaware ("Operating Engineers" or "Lead Plaintiff"), and Additional Plaintiff, Hawaii Iron Workers Pension Trust Fund ("Hawaii Iron Workers" or "Additional Plaintiff" and, together with Lead Plaintiff, "Plaintiffs"), respectfully submit this memorandum in support of their motion requesting the following: (i) an award of attorneys' fees of 33 1/3% of the $18 million Settlement Amount plus accrued interest; (ii) payment of necessary and reasonable litigation expenses in the amount of $1,290,333.96; and (iii) an award of $4,625 to Lead Plaintiff and $21,217.79 to Additional Plaintiff pursuant to 15 U.S.C. §77z-1(a)(4) and 15 U.S.C. §78u-4(a)(4).[1]

The $18,000,000 settlement provides significant relief to the Class.  Plaintiffs seek an award of attorneys' fees of one third of the Settlement Amount, or $6,000,000 to Class Counsel.[2] Counsel and their professionals have spent, in the aggregate, 16,865 hours in the prosecution of this case against Defendants, resulting in a lodestar of $9,158,077.24.  *See* Declaration of Laurie Rubinow in Support of Motion for Attorneys' Fees, Expenses, and Compensatory Awards ("Rubinow Decl."); Declaration of David A. Rosenfeld in Support of Motion for Attorneys' Fees, Expenses, and Compensatory Awards ("Rosenfeld Decl.").  The fees sought in this case are well within the range regularly approved by courts in this Circuit.  *See Strougo v. Barclays PLC*,

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning as in the Stipulation and Agreement of Settlement ("Stipulation") dated November 1, 2021 (ECF No. 214-1).

[2] "Class Counsel" refers to Miller Shah LLP ("Miller Shah"), Lead Counsel in this action; Robbins Geller Rudman & Dowd LLP ("Robbins Geller") is additional counsel for the Class. "Counsel" refers collectively to Miller Shah and Robbins Geller.

No. 14-cv-05797-VM-DCF, ECF No. 146 (awarding 33% of $27 million settlement); *In re Facebook, Inc. IPO Sec. & Deriv. Litig.* ("*Facebook I*"), 2015 WL 6971424, at *9 (S.D.N.Y. Nov. 9, 2015) (awarding 33% of $26.5 million settlement), *aff'd*, 674 Fed. Appx. 37 (2d Cir. 2016); *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *10 (S.D.N.Y. May 9, 2014), *aff' d sub nom. Arbuthnot v. Pierson*, 607 Fed. Appx. 73 (2d Cir. 2015) (awarding 33% of $15 million settlement).  Moreover, the fee was negotiated and approved by Plaintiffs, each of which actively participated in the litigation.

Plaintiffs also seek payment of litigation expenses of $1,290,333.96 to Counsel.  *See* Rubinow Decl., Ex. B; Rosenfeld Decl., Ex. B.  The expenses incurred by Class Counsel during the course of litigating this action, and detailed in the accompanying declarations, were both reasonable and necessary to successfully prosecute and resolve the claims against Defendants.

Likewise, the Court should award an award of $4,625 to Lead Plaintiff and $21,217.79 to Additional Plaintiff (which is less than the $40,000 preliminarily found reasonable by the Court) to compensate them for their time and service to the Class, as permitted by 15 U.S.C. §77z-1(a)(4) and 15 U.S.C. §78u-4(a)(4).  Plaintiffs and their employees devoted significant amounts of time and effort to researching the facts of the case, reviewed filings, produced documents, sat for depositions, and regularly conferred with Counsel about litigation strategy and the progress of settlement negotiations, culminating with Plaintiffs' authorization of the Settlement.

"Congress, the Executive Branch, and [the Supreme] Court, moreover, have 'recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions . . . .'"  *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 478 (2013).  The efforts of Plaintiffs and Counsel in this action embody this spirit and warrant the requested awards.

2

Following entry of the Preliminary Approval Order, Strategic Claims Services ("SCS") distributed Notice consistent with the plan set forth in the Settlement and Preliminary Approval Order.  *See* Declaration of Josephine Bravata Concerning: (a) Mailing of the Notice and Claim Form; (b) Publication of the Summary Notice; and (c) Report on Requests for Exclusion and Objections ("Bravata Decl.").  The Notice amply describes the terms of the Settlement, nature and history of the litigation, manner in which objections can be lodged, process to request exclusion, Plan of Allocation, and fees, expenses, and compensatory awards to be sought.  The deadline for objections and requests for exclusion is January 20, 2022.  To date, no objections or requests for exclusion -- to the Settlement or requests for fees, expenses, and PSLRA awards -- have been received by Class Counsel or SCS.  *See* Rubinow Decl. ¶ 27; Bravata Decl. ¶¶ 13-14 .

## II.     **BACKGROUND**

A more comprehensive background and procedural history related to this action, as well as the negotiation of and considerations leading to the Settlement, are set forth in the contemporaneously-filed Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement.  Accordingly, this Memorandum will only provide additional background relevant to Class Counsel's Motion for Attorneys' Fees, Expenses, and Awards to Plaintiffs.

The Settlement reached in this action followed well over three years of active litigation by Plaintiffs and their counsel, including *inter alia*: (a) a lengthy investigation of Plaintiffs' claims on behalf of the Class, including the review and analysis of publicly available information regarding Defendants and the subject matters of this litigation (*e.g.*, SEC filings, financial and press articles, analyst reports and presentations, press releases, earnings conference calls, and trading data; (b) carefully drafting a detailed complaint and two amended complaints; (c) consulting with investigators and experts concerning Defendants' potential liability; (d)

3

consulting with a damages expert to evaluate recoverable losses; (e) opposing and prevailing in

part against Defendants' motions to dismiss; (f) successfully moving for class certification,

which included several expert and fact depositions; (g) engaging and completing comprehensive

merits and expert discovery, which included 16 depositions of party-affiliated fact witnesses,

depositions of the confidential witnesses cited in the Second Amended Complaint, and

depositions of seven expert witnesses, as well as the review and analysis of over one million

pages of documents; (k) participating in a two-day mediation session and submitting briefs and

supplemental information to the mediator; (l) successfully negotiating the Settlement over the

course of several months while active discovery continued in full; and (m) finalizing the terms of

the Stipulation with Defendants.

### III.   ARGUMENT

#### A.   Counsel Are Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund

In class action litigation, the attorneys who secure a recovery for a class are generally

"entitled to a reasonable attorney's fee from the fund as a whole."  *See Boeing Co. v. Van*

*Gemert*, 444 U.S. 472, 478 (1980).  "The court's authority to reimburse the representative

parties . . . stems from the fact that the class-action device is a creature of equity and the

allowance of attorney related costs is considered part of the historic equity power of the federal

courts."  7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and

Procedure §1803, at 325 (3d ed. 2005).

"The purpose of the common fund doctrine is to fairly and adequately compensate class

counsel for services rendered and to ensure that all class members contribute equally towards the

costs associated with litigation pursued on their behalf."  *Aeropostale*, 2014 WL 1883494 at *10

(citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000)).  This doctrine also

encourages "skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature." *Id.*

    Plaintiffs' and Counsel's efforts here have resulted in a significant common fund recovery for the Class and reflect the private enforcement aims of the securities laws.  In light of these substantial efforts, the requested attorneys' fees of 33 1/3% of the Settlement Fund, as well as payment of Litigation Expenses, which were reasonable and necessary in achieving the Settlement, are warranted.

    **B.**    **The Court Should Award a Reasonable Percentage of the Common Fund**

    The Second Circuit has authorized district courts to employ the percentage-of-the-fund method when awarding fees in common fund cases.  *See Goldberger*, 209 F.3d at 47 (holding that the percentage-of-the-fund method may be used to determine appropriate attorneys' fees); *see also* Manual for Complex Litigation (Fourth) §14.121 (2004) (explaining that one purpose of the percentage-of-the-fund method is to align the incentives of plaintiffs and their counsel, encourage the efficient resolution of disputes, and "ensure that competent counsel continue to be willing to undertake risky, complex, and novel litigation.").  The percentage-of-the-fund method is consonant with the Private Securities Litigation Reform Act ("PSLRA"), which provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class.  15 U.S.C. §78u-4(a)(6).  Ultimately, the "[d]etermination of 'reasonableness' is within the discretion of the district court." *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at \*10 (S.D.N.Y. Oct. 26, 2004).

    While the lodestar approach has been embraced by some courts in this Circuit, courts in this District have recently recognized "[t]he trend in the Second Circuit is to assess a fee application using the 'percentage of the fund approach[.]'" *Oklahoma Firefighters Pension and*

5

*Ret. Sys. v. Lexmark Int'l, Inc.*, 2021 WL 76328, at *4 (S.D.NY. Jan. 7, 2021) (citation omitted); *see also In re Signet Jewlers Ltd. Sec. Litig.*, 2020 WL 4196468, at *15 (S.D.N.Y. July 21, 2020) (citing *Goldberger*, 209 F.3d at 48-49) ("The Second Circuit has approved the percentage method, recognizing that the 'lodestar method proved vexing' and had resulted in 'an inevitable waste of judicial resources.'").

Given the embrace of the percentage-of-the-fund method by the Second Circuit and a loud chorus of district courts around the country, as well as the consistency of the approach with the policy aims of the PSLRA, the Court should award fees here based on a percentage of the Settlement Fund.

### C.    The Relevant Factors Confirm that the Requested Fee is Reasonable

The Second Circuit in *Goldberger* explained that, whatever approach is used to determine fees, courts should consider the traditional criteria indicating a reasonable fee in common fund cases, including: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50.  Application of these factors to Counsel's request here demonstrates that the requested fee is fair and reasonable.

It also bears noting that the reasonableness of an attorney's fee may be assessed by simply asking "what a reasonable, paying client would be willing to pay" for counsel's services. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. Of Albany & Albany Cty. Bd. Of Elections*, 522 F.3d 182, 184 (2d Cir. 2008).  Thus, courts place substantial weight on negotiated fee agreements, as they typically reflect actual market rates.  *See In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008); *see also In re Signet Jewelers Ltd.*, 2020 WL

4196468 at *17 ("[t]he existence of the [retainer] agreement and the approval of the requested fee by Lead Plaintiff, which was actively involved in the prosecution and settlement of the action, supports approval of the fee.").  Indeed, if this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery.  *Blum v. Stenson*, 465 U.S. 886, 903 (1984) ("In tort suits, an attorney might receive one third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring).  Here, Plaintiffs and Counsel have agreed on attorneys' fees of 33 1/3% of the total recovery.  The agreement reached by Plaintiffs and Counsel should be given considerable deference and serve as a baseline for the fee award in this action.

Under the *Goldberger* factors, courts also assess the reasonableness of a fee request by referring to other settlements of a similar size, complexity, and subject matter.  *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 2018 WL 5839691, at *2 (S.D.N.Y. Nov. 8, 2018). Courts will look to other similarly sized settlements and determine whether the magnitude and complexity of the case supports the baseline.  *Grice v. Pepsi Beverages Co.*, 363 F. Supp. 3d 401, 406 (S.D.N.Y. 2019).  Courts will then look at the remaining *Goldberger* factors, including the risk of litigation, the quality of representation, and any other public policy concerns, to determine if the baseline fee must be adjusted.  *Id*.  Here, the requested fee of 33 1/3% is based on a reasonable baseline percentage that accounts for the magnitude and complexity of this case, the work that Counsel undertook, the skill and quality of Counsel's representation, and public policy considerations, thereby satisfying each of the *Goldberger* factors.

### 1.     The Time and Labor Expended by Counsel

Counsel have expended a substantial amount of time and effort pursuing this litigation on behalf of the Class.  In total, Counsel and their professionals have devoted more than 16,865 hours to this litigation.  Counsel conducted a comprehensive investigation of Plaintiffs' claims on behalf of the Class, researched and prepared a detailed complaint and two amended complaints, fully briefed and prevailed in part in challenging Defendants' motions to dismiss, successfully moved for certification of the Class, which included depositions of Plaintiffs and an expert, engaged in comprehensive merits discovery, which included 16 depositions of party-affiliated fact witnesses, depositions of the confidential witnesses cited in the Second Amended Complaint, and depositions of seven expert witnesses, as well as the review and analysis of over one million pages of documents, participated in a two-day mediation session and submitted briefs and supplemental information to the mediator, successfully negotiated the Settlement over the course of several months while active discovery continued in full, finalized the terms of the Stipulation with Defendants, and with the assistance of their damages expert, prepared the proposed Plan of Allocation.  Moreover, Counsel's work on this litigation will not end with the Court's approval of the Settlement.  Counsel will necessarily expend additional hours and resources to assist members of the Class with the claims process.  *See Aponte v. Comprehensive Health Mgmt., Inc.*, 2013 WL 1364147, at *6 (S.D.N.Y. Apr. 2, 2013).

At all times during the pendency of the litigation, Counsel's efforts were driven by and focused on advancing the litigation to bring about the most successful outcome for the Class.  Accordingly, the time and effort devoted to this case by Counsel to obtain the $18,000,000 recovery confirms that the 33 1/3% fee request is reasonable.

2.      **The Magnitude, Complexity, and Risk of Litigation**

This Circuit has described the risk of the litigation as probably the "foremost factor to be considered in determining" a reasonable fee award.  *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 129 (S.D.N.Y. 2009); *see also In re AOL Time Warner, Inc. Sec. and ERISA Litig.*, 2006 WL 3057232, at *15 (S.D.N.Y. Oct. 25, 2006) (the judiciary's focus is on "fashioning a fee" that encourages lawyers to "undertake future risks for the public good").  The risk of undertaking litigation is assessed as of the time of filing.  *See Goldberger*, 209 F.3d at 55.  In addition, Counsel took this case on a contingent basis and invested significant time, money, and resources to advance the Action.  *See Aeropostale*, 2014 WL 1883494 at *14 ("The Second Circuit has recognized that the risk associated with a case undertaken on a contingent basis is an important factor in determining an appropriate fee award.").  The risk here was particularly great given the complexity of the underlying substantive issues and AMC's ability to vigorously defend the action for many years.

In complex securities fraud litigation, plaintiffs and counsel face significant challenges in proving liability, loss causation, and damages.  *See In re Platinum and Palladium Commodities Litig.*, 2014 WL 3500655, at *12 (S.D.N.Y. July 15, 2014).  This case is no exception.  Plaintiffs allege that various filings and public statements by AMC and its officers misrepresented and omitted material facts concerning AMC's acquisition and integration of several domestic and international theatrical exhibitors, in violation of the Securities Act of 1933 and the Securities Exchange Act of 1934.  If this case had proceeded to trial, the jury would have been tasked with resolving complex factual issues concerning the financial and operational state of certain of AMC's business units and the sufficiency of the due diligence conducted by the underwriter defendants and director defendants in connection with the SPO (subjects on which the parties

9

each obtained expert opinions).  The jury would have had to resolve several other battles of the experts, including determining whether AMC's securities traded in an efficient market, the measure of inflation of AMC's securities, and how much of the price decline was attributable to the alleged disclosure of information correcting Defendants' alleged misstatements and omissions.  Scienter is also a difficult and risky element of securities fraud cases.  *See In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001).

Even if Plaintiffs successfully proved liability, there is significant additional risk related to proof of damages, including the appropriate measure of damages in the face of competing analyses.  *See In re Milken & Associates Sec. Litig.*,150 F.R.D. 46, 54 (S.D.N.Y. 1993) (approving settlement of a small percentage of the total damages sought because the magnitude of damages often becomes a "battle of experts . . . with no guarantee of the outcome"); *see also In re Paine Webber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997) (same).  Disentangling the market's reaction to various pieces of news in order to establish loss causation would have required complicated expert testimony and use of methodologies that are debated among economists.  *See Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014) ("Proof of damages in complex class actions is always complex and difficult and often subject to expert testimony.").  In this litigation, there would be a real possibility that a jury could be swayed by experts for Defendants to adopt testimony and methods that minimize the Class' losses or show that the losses were attributable to factors other than the alleged misstatements and omissions.  *See In re Marsh & McLennan Cos. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009).  Thus, even if Plaintiffs prevailed as to liability at trial, the trier of fact could have determined that there were no damages or that damages were only a fraction of what Plaintiffs claimed.  "In this 'battle of

experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions." *See In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

This complexity warrants the requested fee award. *See In re Citigroup Inc. Bond Litig.*, 988 F. Supp. 2d 371, 379 (S.D.N.Y. 2013) ("The upshot is that the magnitude and complexity of the litigation also weigh in favor of a significant award."); *see also In re Giant Interactive Group, Inc. Securities Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011) ("[a] securities case, 'by its very nature, is a complex animal.'") (quoting *Maley v. Del Global Technologies Corp.*, 186 F. Supp. 2d 358, 372 (S.D.N.Y. 2002)); *Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 WL 3119374, at *6 (S.D.N.Y. Aug. 6, 2010) (describing the work undertaken by class counsel in a "complicated and difficult class action" that involved "significant discovery [and] complicated statistical analysis"). Through trial and possible appeals, this case would have only grown in complexity.

Moreover, in assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). As this case amply demonstrates, securities class actions present hurdles to proving liability that are difficult for plaintiffs to meet. *See In re AOL Time Warner, Inc.*, 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006) (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation"); *In re Alloy, Inc. Sec. Litig.*, 2004 WL 2750089, at *1-*2 (S.D.N.Y. Dec. 2, 2004) (finding that issues present in securities action presented significant hurdles to proving liability).

11

In light of the uncertainty of success at trial and on appeal, settlement at this point in the litigation, which provides tangible and certain relief to the Class now, is highly beneficial to the Class.  Accordingly, these factors each support a finding that the requested fee is reasonable and fair.

### 3.    The Settling Parties Were Represented by Experienced, High-Caliber Counsel Who Approved the Settlement

The result achieved and the quality of the services provided are important factors to be considered in determining the amount of reasonable attorneys' fees under a percentage-of-fund analysis.  *See Goldberger*, at 209 F.3d at 50; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745, 748 (S.D.N.Y. 1985).  Despite the significant risk to recovery in this litigation, Counsel successfully obtained a substantial cash settlement for the Class.

Assessing the quality of representation involves evaluation of the results of litigation, *see Goldberger*, 209 F.3d at 55, as well as the experience and standing of the attorneys involved in achieving those results.  *See In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 141 (S.D.N.Y. 2008).  Miller Shah and Robbins Geller each have extensive experience handling cases among the most complicated filed in Federal courts, including in the specialized field of securities litigation.  *See* Rubinow Decl., Ex. C; Rosenfeld Decl., Ex. E.  In addition, each firm leveraged its experience and resources to thoroughly evaluate the merits and risk of this litigation, and successfully negotiate the Settlement.  A recovery of $18,000,000 is especially noteworthy given the caliber of defense counsel for all Defendants in this litigation, including Weil, Gotshal & Manges LLP and Shearman & Sterling LLP.  *See Meredith Corp. v. SESAC, L.L.C.*, 87 F. Supp. 3d 650, 670 (S.D.N.Y. 2015); *see also Aeropostale*, 2014 WL 1883494 at *17 ("The highly skilled attorneys at Weil Gotshal zealously fought Lead Plaintiff's claims at

every turn, but notwithstanding this formidable opposition, Lead Counsel was able to develop

Lead Plaintiff's case so as to resolve the litigation on terms favorably to the Class.").

The response of the Class to the Settlement also bears on this analysis. While the

deadline to object or request for exclusion from the Class has not yet passed, it is notable that to

date there has not been a single objection from a Class Member and no Class Member has

chosen to opt out of the Settlement. *See* Rubinow Decl. ¶ 27; Bravata Decl. ¶¶ 13-14. This

reception to the Settlement is a further indication of Counsel's skillful and quality representation

of Plaintiffs in this Action, and supports the fee and expense request.

> ### 4.    The Requested Fee is Fair and Reasonable in Relation to the Settlement

Under the percentage-of-recovery approach, Class Counsel's fee request of 33 1/3% of

the Settlement Amount is fair and reasonable for litigation of this kind and wholly consistent

with the range of percentages that courts in this Circuit have awarded in similar securities class-

action settlements of this size. *See, e.g.*, *In re Deutsche Bank AG Sec. Litig.*, 2020 WL 3162980,

at *1-2 (S.D.N.Y. June 11, 2020) (awarded one third of $18.5 million recovery, plus expenses);

*Aeropostale*, 2014 WL 1883494 at *10 (awarding 33% of $15 million settlement); *In re

Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *12 (S.D.N.Y. Nov. 9,

2015), *aff'd sub nom. In re Facebook, Inc.*, 674 F. App'x 37 (2d Cir. 2016) (awarding one-third

of $26,500,000 settlement).

> ### 5.    The Requested Fees are Reasonable Under Either the Percentage-of-the-Fund Method or the Lodestar Method

When awarding fees under the percentage-of-the-fund method, courts in this Circuit may

conduct a lodestar "cross-check" to ensure that a fee award is fair and reasonable and that

counsel is not receiving a windfall. *See In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp.

3d 344, 353 (S.D.N.Y. 2014). Lodestar is calculated by multiplying the hours billed by a

reasonable hourly rate for each timekeeper.  *See id.* at 347.  When used as a cross-check, the documented hours by counsel need not be "exhaustively scrutinized by the district court."  *See Goldberger*, 209 F.3d at 50.  Counsel have devoted over 16,865 hours of attorney and para-professional time prosecuting this action from its inception on behalf of Plaintiffs and the Class.  The number of hours spent in this action are reasonable considering the complexity and magnitude of this case, the investigation it required, the length of its pendency, and the vigor with which it was defended.  The billing rates used to calculate the lodestar are also reasonable.[3]  The hourly billing rates for attorneys working on this action ranged from $175 to $1325.  *See* Rubinow Decl., Ex. A; Rosenfeld Decl., Ex. A.  Billing rates in a similar range have been approved by courts in this Circuit as reflective of market rates for work of comparable magnitude and complexity.  *See, e.g.*, *GSE Bonds*, 2020 WL 3250593, at *1 (granting fee award using partner rates of $675 to $980 and associate rates of $365 to $820); *In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *17 (S.D.N.Y. 2016) (granting fee award using partner rates of $834 to $1,125 and associate rates of $411 to $714); *In re Foreign Exchange*, No. 13-cv-7789, ECF No. 482, 2018 WL 5839691 (granting fee award using partner rates up to $1,375 and associate rates of $350 to $700).

After the lodestar figure is calculated, courts typically enhance it by a positive multiplier "to reflect consideration of a number of factors, including the contingent nature of success and

---

[3]In computing the lodestar, the hourly billing rate to be applied is the "market rate"—the hourly rate that is normally charged in the community where counsel practices. *See, e.g., Blum*, 465 U.S. at 895; *Hensley v. Eckerhart*, 461 U.S. 424, 447 (1983) ("market standards should prevail"); *In re Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992) ("[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price.  It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order," holding that district court committed legal error in placing "a ceiling of $175 on the hourly rates of all lawyers for the class, including lawyers whose regular billing rates were almost twice as high").

the quality of the attorney's work." *Maley*, 186 F. Supp at 370. A 33 1/3% fee award of the Settlement represents a modest lodestar multiplier of .66, which is well within the range of lodestar multipliers approved by courts in this Circuit and further demonstrates the reasonableness of the requested fee. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 123 (2d Cir. 2005) (approving a multiplier of 3.5 as reasonable and observing that "multipliers of between 3 and 4.5 have become common"); *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 376 (S.D.N.Y. 2005) (approving multiplier of 3.47 when counsel achieved an early settlement); *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) ("the resulting multiplier of 2.09 is at the *lower* end of the range of multipliers awarded by courts within the Second Circuit[.]" (emphasis added)); *see also Colgate-Palmolive*, 36 F. Supp. 3d at 353 (5 multiplier is "large, but not unreasonable").

> **6.      Private Securities Litigation is an "Essential Supplement" to Criminal Prosecution and Civil Enforcement**

Public policy concerns favor the award of reasonable fees in class action securities litigation, as it is an important financial incentive that attracts well-qualified attorneys who are able to take cases to trial, often on a contingent basis. *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005). Public policy dictates that a substantial fee is appropriate to reward Counsel for taking on risky litigation and to encourage counsel to take on similar risks in the future. *See Colgate-Palmolive*, 36 F. Supp. 3d at 352 ("Counsel's fees should reflect the important public policy goal of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest."). Awarding 33 1/3% of a $18,000,000.00 Settlement is not only reasonable, but will provide a sufficient incentive for others to bring litigation that serves the public interest. *Goldberger*, 209 F.3d at 51.

### D.    The Requested Litigation Expenses are Reasonable

"It is well-settled that attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients." *In re Facebook, Inc. Sec. & Deriv. Litig.* ("*Facebook II*"), 343 F. Supp. 3d 394, 418 (S.D.N.Y. 2018) (quoting *In re Independent Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 184 (S.D.N.Y. 2003); *see also In re Arakis Energy Corp. Sec. Litig.*, 2001 WL 1590512, at *17 n.12 (E.D.N.Y. Oct. 31, 2001) (courts in this Circuit grant expense requests in common fund cases as a "matter of course").

Here, the most substantial categories of Litigation Expenses are associated with expert witnesses and deposition services.  Plaintiffs retained multiple expert witnesses, who issued opinions at the class certification and expert discovery stages.  In addition, Plaintiffs deposed 16 party-affiliated fact witnesses and multiple expert witnesses.  These categories of expenses are commonly recognized as necessary and recoverable in class action litigation.  *See In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 272-73 (S.D.N.Y. 2012) (awarding more than $1 million in expenses).  The duration and complexity of this action further counsel in favor of the requested award of Litigation Expenses.  *See Facebook II*, 343 F. Supp. 3d at 418.

This Court should award Litigation Expenses in the amount of $1,290,333.96 as set forth in greater detail in the accompanying declarations.

### E.    The Awards to Plaintiffs are Reasonable

The PSLRA permits Plaintiffs to seek an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class[]."  15 U.S.C. § 78u-4(a)(4).  "Courts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages,

as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *In re Signet Jewlers Ltd.*, 2020 WL 4196468 at *22; *see also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (incentive awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general").

Plaintiffs' participation in this litigation comprises activities routinely compensated in analogous litigation. Indeed, courts in this District have approved awards to account for time spent communicating with lead counsel, reviewing and providing feedback on pleadings and other papers, gathering and producing documents, preparing for depositions, participating in mediation sessions, and evaluating and approving of proposed settlements. *See, e.g.*, *In re Signet Jewlers Ltd.*, 2020 WL 4196468 at *23 (citing *Marsh & McLennan Cos.*, 2009 WL 5178546 at *15).

Here, Plaintiffs at all times adequately represented the Class and should receive an award of an award of $4,625 to Lead Plaintiff and $21,217.79 to Additional Plaintiff for their efforts. Plaintiffs regularly communicated with Counsel about the progress of this action, as well as litigation and settlement strategy, devoted time and effort to researching the facts of the case, reviewed and provided feedback on filings, collected and produced documents, and sat for depositions. *See* Rubinow Decl., Ex. D (Declaration of John Heenan); Rosenfeld Decl., Ex. F (Declaration of Joseph O'Donnell). These are "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *In re Signet Jewlers Ltd.*, 2020 WL 4196468 at *23 (citing *Marsh & McLennan Cos.*, 2009 WL 5178546 at *15).

17

The requested award is also appropriate in light of "the relationship between the requested incentive award and the amounts recovered by absent class members under the settlement." *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 370 (E.D.N.Y. 2010) (citation omitted); *see also Facebook II*, 343 F. Supp. at 418 (awarding more than $56,000 where settlement was $35 million).

Class Counsel submits that the relatively modest request of an award in the amount of $4,625 to Lead Plaintiff and $21,217.79 to Additional Plaintiff to compensate the Class Representatives in this action for their time and service to the Class, as well as to function as an incentive to serve as class representative, is reasonable.

## IV.    **CONCLUSION**

Plaintiffs respectfully request that the Court grant Plaintiffs' application for an award of attorneys' fees, payment of Litigation Expenses, and awards to Plaintiffs.

Dated: January 6, 2022                     Respectfully submitted,

                                           MILLER SHAH LLP

                                           /s/ Laurie Rubinow
                                           James E. Miller
                                           Laurie Rubinow
                                           65 Main Street
                                           Chester, CT 06412
                                           Telephone: (860) 526-1100
                                           Facsimile: (866) 300-7367
                                           Email: jemiller@millershah.com
                                                  lrubinow@millershah.com

James C. Shah
Jayne A. Goldstein
Eric L. Young
Bruce D. Parke
Alec J. Berin
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (610) 891-9880
Facsimile: (866) 300-7367
Email: jcshah@millershah.com
        jagoldstein@millershah.com
        elyoung@millershah.com
        bdparke@millershah.com
        ajberin@millershah.com

*Attorneys for Lead Plaintiff, the
International Union of Operating
Engineers Pension Fund of Eastern
Pennsylvania and Delaware, and
the Class*


ROBBINS GELLER RUDMAN &
DOWD LLP

Samuel H. Rudman
David A. Rosenfeld
Christopher T. Gilroy
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: (631) 367-7100
Facsimile: (631) 367-1173
Email: srudman@rgrdlaw.com
        drosenfeld@rgrdlaw.com
        cgilroy@rgrdlaw.com

*Attorneys for Plaintiff, Hawaii Iron
Workers Pension Trust Fund, and
the Class*

19